In the Matter of ROBERT L. PARKER, Appellant, v ALBERTA H. PARKER, Respondent. [758 NYS2d 733] —Appeal from an order of Family Court, Monroe County (Rivoli, J.), entered August 13, 2002, which sustained respondent's objection to the order of the Hearing Examiner with respect to the amount of child support arrears and remitted the matter to the Hearing Examiner to recalculate such arrears.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously modified on the law and facts by providing that petitioner owes child support arrears in the amount of $24,485.19, or $126,389 minus $69,726.21 minus $32,177.60, and by vacating the remittal of the matter to the Hearing Examiner and as modified the order is affirmed without costs. All findings of fact contained in the decision of the Hearing Examiner and the decision of Family Court that are inconsistent with the memorandum herein are hereby reversed and new findings are made pursuant to CPLR 5712 (c) as contained in the following memorandum: Petitioner com-

menced this proceeding seeking, inter alia, enforcement of the child support provisions of the parties' 1989 separation agreement, which was incorporated but not merged into their October 1989 divorce decree, and the parties' series of oral modifications or waiver agreements over the subsequent years. In essence, petitioner sought a recalculation of his child support arrears, as administratively determined by the Child Support Enforcement Unit (CSEU) of the Monroe County Department of Social Services, in accordance with the parties' various agreements concerning the proper level of support. Petitioner appeals from an order of Family Court sustaining the objection of respondent, the support recipient, regarding the amount of child support arrears calculated by the Hearing Examiner, and remitting the matter to the Hearing Examiner for a recalculation of such arrears. Whereas the Hearing Examiner had found petitioner to be $12,389 in arrears as of May 17, 2002, Family Court suggested that he was in arrears in a much larger sum, approximately $60,000.

As a matter of law and in the exercise of our independent power of factual review (*see Matter of Sean T.* [appeal No. 2], 302 AD2d 990 [2003]; *Matter of Michael C.,* 170 AD2d 998, 999 [1991]; *see generally* CPLR 5712 [c]), we make our own findings and determinations. The testimony and documentary evidence establishes that, beginning October 16, 1989, petitioner was obligated to pay $200 per week, or $866 per month, in child support. In January 1993 the parties expressly agreed to reduce that monthly obligation to $838. In August 1994 the parties further expressly agreed to treat petitioner's "retirement" as a period of "involuntary unemployment," and accordingly agreed to reduce petitioner's child support obligation to $313 per month, pursuant to article XII of the separation agreement. Beginning in April 1995, petitioner commenced work as a real estate agent, a circumstance that the parties treated as warranting a restoration of his original child support obligation, as modified by the parties in January 1993 and as further adjusted in accordance with article XV of the separation agreement, which called for a reduction of the level of child support by 40% of the amount by which respondent's gross earnings from employment exceeded $20,000 per year. The record establishes that, beginning no later than 1995 and continuing through the May 17, 2002 hearing, respondent consistently had gross earnings of more than $20,000 per year from her employment. For his part, petitioner continued to be employed as a licensed real estate agent and, later, as a real estate appraiser. Effective December 29, 2000, through the CSEU, respondent obtained an administrative order making a

cost-of-living adjustment to petitioner's support obligation, thus increasing it to $229 per week, or $992 per month.

We determine the basic support obligation of petitioner, without regard to his payments or any adjustment or credit to which he is entitled under article XV of the separation agreement, as follows:

(1) for the period October 16, 1989 through January 15, 1993, $866 per month (per the separation agreement) for 39 months, for a subtotal of $33,744;

(2) for the period January 16, 1993 through September 15, 1994, $838 per month (per the parties' January 1993 oral agreement [see Matter of O'Connor v Curcio, 281 AD2d 100, 103-105 (2001); Parmigiani v Parmigiani, 250 AD2d 744, 745 (1998)]) for 20 months, for a subtotal of $16,760;

(3) for the period September 16, 1994 through April 15, 1995, $313 per month (per the August 1994 oral agreement [see O'Connor, 281 AD2d at 105; Parmigiani, 250 AD2d at 745]) for seven months, for a subtotal of $2,191;

(4) for the period April 16, 1995 through January 15, 2001 (i.e., until the first payment due after the December 2000 administrative order), $838 per month (per the April 1995 tacit agreement to restore the level of support expressly agreed upon in January 1993) for 69 months, for a subtotal of $57,822; and

(5) for the period January 16, 2001 through May 17, 2002, $992 per month (per the December 2000 administrative order) for 16 months, for a subtotal of $15,872.

On the basis of the foregoing, we find petitioner's total child support obligation from October 16, 1989 through May 17, 2002, before application of any article XV credit, to have been $126,389.

On the basis of the documentary evidence and testimony, we find the total of petitioner's payments over the entire 151-month period in question, including direct payments to respondent and wage deduction remittances to and asset seizures by CSEU, to have been $69,726.21.

Finally, we conclude that petitioner is entitled to a credit under article XV of the separation agreement in an amount equal to 40% of the amount by which respondent's gross earnings exceeded $20,000 per year from 1995 through May 17, 2002. On the basis of respondent's tax returns for the years 1995 through 2001, we find that respondent's gross earnings exceeded $20,000 per year by a total of $73,216 for those years. Moreover, using the 2001 gross earnings of respondent in order to extrapolate her 2002 gross earnings, we find that her excess

annual gross earnings should be prorated at $7,228 for the first five months of 2002. Combining those two figures yields a sum of $80,444, 40% of which is the appropriate amount of petitioner's article XV credit. Thus, petitioner is entitled to an article XV credit of $32,177.60.

On the basis of the foregoing, we modify the order by providing that petitioner owes child support arrears in the amount of $24,485.19, or $126,389 minus $69,726.21 minus $32,177.60, and by vacating the remittal of the matter to the Hearing Examiner. Present—Pine, J.P., Wisner, Kehoe, Burns and Gorski, JJ.