SHAHOOD, J.
This is an appeal by the former husband, Arthur Blitz (Blitz), from an Order Confirming Registration of Foreign Support Order and Establishing Arrears. Because we hold the trial court erred in interpreting the parties’ support agreement and subsequent modifications and in determining child support arrearages, we reverse and remand.
On November 7, 1996, the marriage of Blitz and Catherine Maxwell (Maxwell) was dissolved in New Jersey with the entry of a Final Judgment of Divorce. The Final Judgment incorporated the parties’ Property Settlement Agreement (Agreement), which had been entered into on September 13, 1995, but the Agreement was not merged into the final judgment. The Agreement contains the following provisions which are relevant to the issues on appeal:
9. The failure of either party to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of the right thereafter to insist upon performance of that or any other provision contained herein.
[[Image here]]
11. No modifications or waiver of any of the terms of this Agreement shall be valid unless in writing-and executed with the same formality as this Agreement.
[[Image here]]
13. This Agreement shall be construed according to the laws of the State of New York and may be enforced within the State of New Jersey and any court of competent jurisdiction.
[[Image here]]
26. The Husband shall pay to the Wife on the first day of each week beginning Monday the sum of FIVE HUNDRED ($500.00) DOLLARS child support ... until her child shall be emancipated or deceased....
27. The Husband shall pay to the Wife as alimony and support on the first day of each week being Monday the sum of FIVE HUNDRED ($500.00) DOLLARS until such time as the Wife shall die, remarry or live in common with an unrelated male adult....
Because Blitz resided in New York, and Maxwell in Florida, the Florida Department of Revenue filed a request that New York register and enforce the New Jersey Judgment of Divorce and to collect arrears, which she alleged to be $57,500. In July 2002, the circuit court in Palm Beach County was designated as the local depository by virtue of Maxwell’s residence in Palm Beach County, and Blitz was sent a Notice of Delinquency informing him of the arrearages. Blitz responded with a denial of any delinquency and a request for a copy of all supporting documentation on which the calculation was based.
Thereafter, a hearing was held before a general master to adjudicate the arrear-age, if any. Maxwell and Blitz were the only two witnesses to testify at the hearing.
When Blitz began paying child support, he paid to an account held in a bank in New York. The account was used by Maxwell only for receiving child support deposits. In calculating the arrearages, she reviewed her canceled checks and bank *124 deposit records. In addition, she reviewed information provided to her by Blitz and adjusted her figure down accordingly. By Maxwell’s calculations, as of June 24, 2003, the date of the hearing, Blitz owed $56,376.32 in back child support. That figure covered the time period from November 1996 through December 2002. She calculated alimony arrearages in the amount of $30,576.32 for the time period from November 1996 through May 1999. With regard to a lump sum payment of $5,600, which Blitz claimed to have paid, Maxwell stated that she did not remember receiving the money or signing the receipt which was entered into evidence.
When Blitz attempted to introduce into evidence three post-judgment agreements purportedly modifying the terms of the original agreement, the court denied the request, stating:
I mean in Florida you have to submit an agreement to the court and have it approved.
[[Image here]]
Well as far as I know, I mean I’m here to enforce the order not subsequent agreement [sic].
[[Image here]]
Well, I’m going to do the best I can to do with the order that was entered by the court in New Jersey and I’m not going to consider these other agreements and if I’m wrong then the court of New York will need to get involved and deal with it. I’m just going to indicate on whatever order I end up doing that the subsequent agreements were not admitted into evidence and I’m basing mine on the original order.
Thereafter, the general master issued a report with findings of fact and conclusions of law. The general master found Blitz to be in arrears on his child support obligation in the amount of $82,172.65 through December 30, 2002. Blitz moved to vacate the report and filed various other pleadings, arguing that subsequent agreements between the parties, which amended the original judgment and Blitz’s support obligation, had been entered into, but erroneously not considered by the general master. Based on the general master’s report, the trial court then entered the order being appealed.
The Settlement Agreement at issue was dated September 13,1995 and entered into in New Jersey. It resolved all property settlement issues, as well as established alimony ($500 per week) and child support obligations ($500 per week). At the time of the Agreement, both parties were residents of New York and there were divorce proceedings pending in both New York and New Jersey. The Agreement contains a choice of law provision electing New York law as the governing law. In addition, the Agreement expressly provides that all modifications or waivers of any of the terms be in writing.
On November 23, 1996, the parties entered into an “Amendment to Agreement of Separation.” This amendment modified the geographical restrictions imposed in the original Agreement to allow Maxwell to move with the minor child to Florida. In addition, Blitz’s alimony obligation was reduced to $200 per week. On August 7, 1998, the parties entered into a second amendment, which voided the November 23, 1996 amendment and reinstated the terms of the original agreement. As a result, Blitz’s alimony obligation of $500 per week'was reinstated. Finally, on January 28, 1999, a third agreement was entered into by the parties. Pursuant to this third agreement, Blitz was released from any further alimony obligations. In determining the amount of arrearages, the trial court considered only the original Agreement and not the subsequent modifica *125 tions. Blitz asserts that this was error. We agree.
Choice of law provisions in property settlement agreements are valid and enforceable pursuant to the Uniform Interstate Family Support Act, as codified in Chapter 88, Florida Statutes. See generally Keeton v. Keeton, 807 So.2d 186 (Fla. 1st DCA 2002)(holding that property settlement agreement was enforceable in Florida with Kentucky law controlling). A trial court’s determination as to which law to apply is reviewed de novo. See Collins Moving & Storage Corp. v. Kirkell, 867 So.2d 1179 (Fla. 4th DCA 2004).
Section 88.6041, Florida Statutes (2003), provides, “[t]he law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order.” The issuing state is “the state in which a tribunal issues a support order.” § 88.1011(9), Fla. Stat. (2003). A “support order” is a judgment for the benefit of a child or spouse that provides for monetary or other support. § 88.1011(21), Fla. Stat. (2003).
In this case, the issuing state is New Jersey; however, the Agreement contains a choice of law provision. Under New Jersey law, the choice of law provision will be given full effect by courts so long as it does not violate public policy of New Jersey. See Haynoski o/b/o Jersey Steel Rule Die Co. v. Haynoski, 264 N.J.Super. 408, 624 A.2d 1030, 1033 (Ct.App.Div.1993). The State of New Jersey recognizes and enforces separation agreements. See generally Harrington v. Harrington, 281 N.J.Super. 39, 656 A.2d 456 (Ct.App.Div.1995).
The law in New York is that child support provisions in stipulated settlement agreements which are incorporated but not merged into a divorce decree, should not be disturbed, “absent a showing that the agreement was unfair or inequitable at the time that it was made, that ail ‘unanticipated and unreasonable change in circumstances has occurred resulting in a concomitant need’ ... or that the child’s right to receive adequate support is not being met.” Engel v. Jacobs, 297 A.D.2d 657, 657-58, 747 N.Y.S.2d 531 (N.Y.App.Div.2002) (citations omitted). Written and oral modifications of such settlement agreements are permitted. See generally Parker v. Parker, 305 A.D.2d 1077, 1078, 758 N.Y.S.2d 733 (N.Y.App.Div.2003). In fact, parties are allowed to modify their support agreements to deviate from, or opt out of, the Child Support Standards Act, New York’s statutory support guidelines, provided the decision is made knowingly and the needs of the child are met. See Schaller v. Schaller, 279 A.D.2d 525, 719 N.Y.S.2d 278 (N.Y.App.Div.2001).
Based on this authority, the trial court erred in failing to admit into evidence or recognize the parties’ modifications to the original support agreement. They were executed with the same formality as the original Agreement and there was no argument below that they were unconscionable or that the child’s needs were not met as a result of the changes. The error resulted in a significant miscalculation because the trial court failed to consider the period of time when Blitz’s alimony obligation was reduced from $500 to $200 per week, as well as the point at which Maxwell waived any future right to alimony. Consequently, we reverse the order and remand for the trial court to consider the post-dissolution agreements and re-calculate the support arrearages accordingly.
Blitz also maintains that the trial court erred in refusing to acknowledge an alleged oral agreement between him and *126 Maxwell, which, reduced his child support obligation to $300 per week. The record does not support this argument. The original agreement states, “[n]o modifications or waiver of any of the terms of this Agreement shall be valid unless in writing and executed with the same formality as this Agreement.” Blitz contends that his February 4, 1999 letter to Maxwell, which purports to memorialize an oral agreement to reduce child support is sufficient proof of such an agreement. The letter is not, however, signed or otherwise acknowledged by Maxwell; therefore, it does not constitute a proper modification under the terms of the original agreement. Further, under the agreement, Maxwell’s acceptance of the reduced payments does not constitute a valid waiver. As such, the trial court did not err in refusing to consider the alleged oral agreement.
Finally, Blitz contends that the trial court erred in not giving him credit for a lump sum support payment of $5,600. He is correct that the evidence does not support the trial court’s finding. The receipt, which is dated September 22, 2001, appears to be signed by Maxwell and states, simply, “I have received $5,600 towards child support ... today.” The trial court accepted Maxwell’s testimony that she did not remember receiving the money; however, the receipt clearly contradicts this finding. As Maxwell did not put forth any evidence to show that her signature was forged or that the receipt was otherwise invalid, it was error for the trial court to disregard the receipt and find that the payment had not been made.
Based on the foregoing, we reverse the final judgment and remand for the trial court to re-calculate the arrearages taking into account the post-dissolution agreements and giving credit to Blitz for the $5,600 lump sum payment. We affirm the trial court’s ruling in refusing to consider the alleged oral agreement with regard to the reduction of the child support obligation.
AFFIRMED in part; REVERSED in part, and REMANDED.
FARMER, C.J., and TAYLOR, J., concur.