EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Wilda Santiago González<br><br>Recurrida<br><br>v.<br><br>Solomón T. Setongo Kabuka<br><br>Peticionario | Certiorari<br><br>2005 TSPR 192<br><br>166 DPR \_\_\_\_ |

Número del Caso: CC-2005-853

Fecha: 15 de diciembre de 2005

Tribunal de Circuito de Apelaciones:

> Región Judicial de Carolina, Humacao y
> Aibonito-Panel XIII

Juez Ponente:

> Hon. Gretchen Coll Martí

Abogado de la Parte Peticionaria:

> Lcdo. Antonio Borrés Otero

Abogada de la Parte Recurrida:

> Lcda. Rosa I. Ward Cid

Materia: Custodia

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilda Santiago González

    Recurrida

      v.

Salomón T. Setongo Kabuka

    Peticionario

CC-2005-853

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 15 de diciembre de 2005

Tenemos nuevamente ante nuestra atención una controversia sobre la custodia de un menor en la cual se invoca lo dispuesto en la ley federal conocida como "Parental Kidnapping Prevention Act" (PKPA), que gobierna los procedimientos de custodia de menores a nivel interestatal, para argüir que los tribunales del Estado Libre Asociado de Puerto Rico no tienen jurisdicción para intervenir en la controversia.

En esta ocasión, acude a nosotros un padre, residente en St. Thomas, Islas Vírgenes de América, quien nos solicita que revoquemos la determinación del Tribunal de Primera Instancia, confirmada por el Tribunal de Apelaciones, asumiendo jurisdicción para

atender un asunto de custodia. Corresponde confirmar dicha determinación.

Resolvemos que, conforme el PKPA, no existe en este momento otro foro con jurisdicción sobre asuntos de custodia y alimentos para este menor. Por consiguiente, por ser Puerto Rico el estado de residencia del menor, procede que asumamos jurisdicción.

## I

Las partes aquí comparecientes, el señor Solomón Setongo Kabuka, (en adelante el señor Kabuka o el peticionario) y la señora Wilda Santiago González (en adelante la señora Santiago o la recurrida), contrajeron matrimonio el 14 de julio de 1990 en St. Thomas, Islas Vírgenes. Allí establecieron su domicilio conyugal ya que el señor Kabuka, quien es de origen africano, se desempeña como profesor universitario de la Universidad de las Islas Vírgenes. Fruto de dicho matrimonio nació un hijo, en Río Piedras, Puerto Rico, el 4 de junio de 1996. Desde su nacimiento, el menor vivió con sus padres en St. Thomas, hasta que el 9 de septiembre de 1999 se decretó la sentencia de divorcio en la Corte Superior de las Islas Vírgenes, División de St. Thomas y St. John. Desde ese momento, tanto la madre como el menor, trasladaron su residencia a Carolina, Puerto Rico, donde han vivido ininterrumpidamente hasta el día de hoy.

El decreto de divorcio emitido por el tribunal de Islas Vírgenes dispuso que las partes debían regirse por las provisiones de un acuerdo de separación por ellas

estipulado.   Este acuerdo se incorporó a la sentencia de divorcio pero no se fusionó, consolidó o absorbió ("merged") al dictamen  de divorcio.   En lo pertinente el decreto de divorcio dispuso que:

ORDERED, ADJUDGED AND DECREED:

. . .

3.   That the parties are ordered to abide by the provisions of their Separation Agreement at all times and in all places, **which Agreement is not merged in this Decree**.   (Énfasis nuestro.)

Mediante el referido acuerdo de separación las partes establecieron cómo se regirían las relaciones paterno filiales y de custodia; y se determinó una pensión alimentaria de quinientos dólares mensuales ($500), a ser pagada por el padre para beneficio del menor.   El acuerdo disponía que ambos progenitores compartirían la custodia legal del menor.   La madre tendría la custodia física de éste durante todo el año, exceptuando los meses de junio y julio, y el periodo comprendido desde Navidad hasta Año Nuevo; en cuyas fechas el menor estaría bajo la custodia física del padre.   Además, se dispuso que las determinaciones de custodia y el monto de pensión debían ser revisadas cada cinco años.

El mencionado acuerdo incorporó una cláusula de mediación y arbitraje compulsorio la cual leía de la siguiente manera:

SECTION SIX

g. In the event that the parties are unable to agree after a review of physical custody

> arrangements or child support amounts, or in respect of any matter concerning the physical custody, financial support, or education, health or welfare of the minor child not provided for herein, the parties shall first seek mediation, utilizing a mediator certified by the Family Division of the Territorial Court of the Virgin Islands, or, if neither party is a resident of the territory, a mediator certified by the equivalent of a family court in the jurisdiction of either of the parties, and, if that is not fully successful, the outstanding matters shall be submitted to binding arbitration.

Pactaron además que, "the provisions of this agreement shall take precedence and shall be the primary obligation of both the parties hereto."

Así las cosas, el 13 de diciembre de 2004, luego de cumplidos los cinco años de decretado el divorcio en St. Thomas, la señora Santiago presentó en el Tribunal de Primera Instancia, Sala de Carolina, una petición para que asumiera jurisdicción sobre el caso; se modificaran las disposiciones relativas a la custodia para otorgarle a ella  la custodia legal y patria potestad; y finalmente, concediera un aumento de pensión alimentaria.  La madre solicitó además que, conforme al acuerdo de separación, se remitiera el aumento de pensión a la atención de un mediador certificado en Puerto Rico.

Luego que el tribunal de instancia ordenara un estudio sobre la custodia y relaciones filiales, el señor Kabuka reclamó la falta de jurisdicción de los tribunales de Puerto Rico, a tenor con la legislación federal "Parental Kidnapping Prevention Act", 28 U.S.C sec. 1738A.  A su vez, presentó en el tribunal de Islas Vírgenes una petición para

modificar las condiciones de custodia, a los efectos de invertir el tiempo que el menor pasaba bajo la custodia física de sus progenitores.

El 27 de abril de 2005, el tribunal de Islas Vírgenes denegó la solicitud del señor Kabuka. El tribunal se proclamó carente de jurisdicción, toda vez que el decreto de divorcio ordenó a las partes a regir todo asunto de modificación de custodia conforme a lo estipulado en el acuerdo de separación y que dicho acuerdo no se fusionó a la sentencia. Sobre ésto la orden dispuso que:

> Consistent with the agreement, the Divorce Decree ordered the parties to 'abide by the provisions of their Separation Agreement at all times and in all places' and further provided that the 'Agreement is not merged in this Decree'. Title 16 V.I.C. §110 provides that after judgment, the Court 'may set aside, alter or modify so much of the judgment as may provide . . . for the care and custody of the minor children. . .' Since the Court's judgment did not provide for the care and custody of the minor child based upon the parties' own agreement, **this Court lacks jurisdiction to reverse the custody arrangement agreed upon by the parties**. (Énfasis nuestro.)

Mientras tanto, en Puerto Rico, la señora Santiago presentó una moción urgente ante el tribunal mediante la cual solicitó se prohibiera la salida del menor de la jurisdicción de Puerto Rico, ya que el señor Kabuka tenía amplia movilidad y fuertes lazos con África. Solicitó además al tribunal que ordenara al señor Kabuka entregar su pasaporte previo a sostener relación paterno filial alguna en esta jurisdicción. El tribunal de instancia asumió jurisdicción sobre el caso y emitió orden para prohibir la salida del menor del Estado Libre Asociado de Puerto Rico.

No conforme, el señor Kabuka acudió al Tribunal de Apelaciones con una petición de *certiorari* en la que alegó nuevamente la falta de jurisdicción de los tribunales de Puerto Rico, y cuestionó la determinación de no remover al menor de la isla. El tribunal *a quo* se reafirmó en que los tribunales de Puerto Rico tienen jurisdicción bajo el fundamento que conforme el PKPA y nuestra jurisprudencia interpretativa, Puerto Rico es el estado de residencia del menor por lo que constituye el foro con jurisdicción en situaciones de conflicto interestatales de custodia. No obstante, el foro intermedio ordenó al tribunal de instancia a reglamentar las relaciones paterno filiales, toda vez que el padre durante los pasados cinco años ha demostrado una conducta correcta y cumplidora en todo lo relacionado a las relaciones con su hijo y a sus obligaciones hacia él.

Ante la determinación del Tribunal de Apelaciones el señor Kabuka acudió a nosotros con un recurso de *certiorari* y una Moción en Auxilio de Jurisdicción. Reclama un solo señalamiento de error, a saber:

> Erró el Honorable Tribunal de Apelaciones al declarar No Ha Lugar a la solicitud de certiorari del Peticionario y encontrar que el Tribunal de Primera Instancia tiene jurisdicción para continuar con los procedimientos del caso de autos, incluyendo custodia y alimentos, a base de las disposiciones del Parental Kidnapping Prevention Act, 28 U.S.C. sec. 1738A(f).

El 17 de octubre de 2005 emitimos una orden a la parte recurrida para que se expresara sobre el recurso presentado. La parte compareció oportunamente con su

alegato.    Con  el  beneficio  de  la  comparecencia  de  las

partes, procedemos a resolver.

**II**

En  el  año  1968  se  promulgó  en  los  Estados  Unidos  el

"Uniform  Child  Custody  Jurisdiction  Act"  (UCCJA),  para

establecer  un  esquema  que  promoviera  la  estabilidad

interestatal  en  materia  de  custodia  de  menores,  y  así

prevenir  la  remoción  interestatal  de  menores  por  sus

propios  padres  o  parientes  con  el  propósito  de  obtener

decretos  de  custodia  favorables  en  otros  foros.    Sin

embargo,  el  UCCJA  no  fue  adoptado  por  todos  los  estados

derrotando  así  su  objetivo.    S.T.  Dickens,  *The Parental

Kidnapping Prevention Act: Application and Interpretation,*

23 J. Family Law 419 (1984-85).[1]

Ante  esta  situación,  el  Congreso  de  los  Estados  Unidos

consideró  que  era  necesario  aprobar  legislación  que

atendiera  este  problema.    Así,  en  el  1980  se  aprobó  la  ley

federal  conocida  como  "Parental  Kidnapping  Prevention  Act"

(PKPA),  28  U.S.C.  sec.  1738A;  convirtiéndose  así  en  el

primer  estatuto  federal  dirigido  a  regular  el  problema  de

remoción  interestatal  de  menores  por  sus  padres  o

parientes.[2]  El  estatuto  identifica  los  siguientes  objetivos

---

[1] El Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Uniform Laws Annotated, Volumen 9, Parte 1A, págs. 649 *et seq.*, posteriormente sustituyó el UCCJA. Esta legislación más reciente fue promulgada en un intento de revisar y clarificar interpretaciones inconsistentes y ambiguas del UCCJA, en específico aquellas disposiciones relacionadas a la jurisdicción del foro judicial.

[2] El PKPA, salvo ciertas diferencias significativas en cuanto al esquema de preferencia jurisdiccional, contiene básicamente el mismo lenguaje que el UCCJA. Véase S.A.

principales: promover la cooperación interestatal; facilitar la ejecución de los decretos de custodia de otros estados; prevenir la competencia y el conflicto interjurisdiccional; y frenar la remoción unilateral de los menores por sus parientes para obtener decretos judiciales favorables en otros foros. La ley rige expresamente en todos los estados de los Estados Unidos, en el Distrito de Columbia, en el Estado Libre Asociado de Puerto Rico, y en los territorios y posesiones de los Estados Unidos de América. 28 U.S.C. sec. 1738A (b)(8).

El PKPA ocupa el campo en materia de determinaciones interestatales de custodia, por cuanto prevalece sobre cualquier otra legislación estatal, incluyendo la propia UCCJA. M.E. Moraza Choizne, *Juridical Solutions in the U.S.A. for Parental Kidnapping in Child Custody Cases,* 24 Rev. Jur. U.I.P.R. 309, 320 (1990).

Como su principal postulado, el PKPA ordena a los tribunales a reconocer entera fe y crédito a los decretos de custodia de otros estados o jurisdicciones, siempre que éstos hayan sido emitidos consistentemente con las disposiciones del estatuto; y el foro original continúe teniendo jurisdicción sobre la materia de custodia del menor. 28 U.S.C. sec. 1738A(a). En su inciso (c) la ley dispone los parámetros que determinan si un decreto de custodia es consistente con el estatuto, a saber: §1738A.

---

Vincenti, *The Parental Kidnapping Prevention Act: Time to Reassess,* 33 Idaho L. Rev. 351 (1997).

(c) Una determinación de custodia o de derecho de visita hecha por un tribunal de un estado es consistente con los requisitos de esta sección solamente si--

(1) dicho tribunal tiene jurisdicción bajo las leyes de su estado; y

(2) se cumple con una de las siguientes condiciones:

A. Ese estado (i) es el estado de residencia del menor a la fecha en que comenzaron los procedimientos, o (ii) ha sido el estado de residencia del menor seis meses antes de la fecha en que comenzaron los procedimientos y el menor se encuentra fuera del estado porque ha sido trasladado o retenido por una de las partes o por otras razones, y una de las partes aún reside en el estado que emitió el decreto;

B. (i) surge que ningún otro estado tiene jurisdicción bajo el párrafo (A), y (ii) para el mejor bienestar del menor el tribunal de dicho estado asume jurisdicción debido a que (I)el menor y sus padres, o el menor y al menos uno de los litigantes, tiene contactos significativos con el estado, más allá de la mera presencia física en el mismo; y (II) está disponible en ese estado evidencia sustancial relativa al cuidado, protección, entrenamiento y relaciones personales presentes o futuras del menor;

C. el menor está físicamente presente en ese estado, y (i) ha sido abandonado, o (ii) existe una emergencia que requiera su protección porque el niño, un hermano o uno de sus padres, ha recibido amenazas o ha estado expuesto a maltrato o abuso;

D.(i) surge que no hay otro estado con jurisdicción bajo los párrafos (A), (B), (C) o (E), u otro estado ha declinado ejercer jurisdicción bajo el fundamento que el estado cuya jurisdicción está en controversia es el foro más apropiado para determinar la custodia del menor, y (ii) es para el mejor bienestar del menor que ese tribunal asuma jurisdicción; o

E.  el tribunal tiene jurisdicción continua conforme al inciso (d) de esta sección.

28 U.S.C. sec. 1738A(c). (Traducción nuestra).  Conforme se desprende de lo anterior, el PKPA reconoce cuatro bases

jurisdiccionales, que son: jurisdicción del estado de residencia del menor, jurisdicción por contactos significativos con el foro, jurisdicción cuando no existe otro estado con jurisdicción o ha declinado ejercerla, y jurisdicción para situaciones en las que el menor se encuentra en estado de emergencia.

El estatuto establece un esquema de preferencia jurisdiccional mediante el cual se favorece el estado de residencia del menor como el foro que mejor está capacitado para atender las cuestiones de custodia de dicho menor. *Ortega v. Morales,* 131 D.P.R. 783 (1992). La ley considera como "estado de residencia" del menor aquel estado o jurisdicción en la que el menor haya vivido con uno o ambos padres, o con un tutor, al menos durante seis meses consecutivos antes de la fecha de inicio de los procedimientos de custodia o fijación de derechos de visita. 28 U.S.C. sec. 1738A(b)(4).

No obstante, si bien el PKPA da preferencia al estado de residencia del menor sobre cualquier otra jurisdicción, la ley confiere jurisdicción continua al estado o foro que haya emitido un decreto original de custodia, para que este foro haga valer o revise sus determinaciones originales. 28 U.S.C. sec. 1738(A)(d). Debe entenderse que ante la existencia de un decreto original que se ajuste a las disposiciones del estatuto, la jurisdicción continua es el criterio principal, aun cuando ésta no sea la jurisdicción de residencia del menor. M.E. Moraza Choizne, *supra,* a la pág. 319. ("In these actions, the jurisdictional basis

[providing continuous jurisdiction] is hierarchically superior even to home state jurisdiction.")

Para que un foro mantenga jurisdicción continua es necesario que se cumplan tres requisitos: **un decreto original de custodia consistente con las disposiciones del PKPA, que el foro original mantenga jurisdicción bajo sus propias leyes, y que dicho foro continúe siendo el estado de residencia del menor o al menos una de las partes.** 28 U.S.C. sec. 1738(A)(d). Véase también A.B. Goldstein, *The Tragedy of the Interstate Child: A Critical Reexamination of the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act,* 25 U.C. Davis L. Rev. 845 (1992).

De otro lado y a manera de excepción, la ley reconoce jurisdicción a un foro para modificar determinaciones de custodia emitidas por otros foros cuando el estado o jurisdicción que pretende modificar el decreto ostenta jurisdicción para hacer determinaciones de custodia; y el tribunal del otro foro ha perdido jurisdicción o ha declinado ejercerla. 28 U.S.C. sec. 1738A(f) y (h). Una vez comenzado un procedimiento de custodia en un estado o jurisdicción, éste sea consistente con las disposiciones del PKPA, y dicho procedimiento se encuentre pendiente; un segundo estado o jurisdicción queda impedido de ejercer jurisdicción, o debe declinar ejercerla. 28 U.S.C. 1738A(g). Véase *P.A.T. v. D.B.*, 638 So.2d 905 (Ala. 1994); *In re Marriage of Hopson*, 110 Cal.App.3d 884 (1980); *Owens v. Huffman,* 481 So.2d 231 (Miss. 1985).

Conforme a la discusión que antecede, procede que determinemos si los tribunales de Puerto Rico pueden asumir jurisdicción sobre la materia de custodia del menor; o si por el contrario, están impedidos de hacerlo debido a que los tribunales de las Islas Vírgenes de América mantienen jurisdicción conforme a la cláusula de jurisdicción continua del PKPA.

### III

Habiéndose decretado el divorcio entre las partes en el tribunal de Islas Vírgenes, corresponde evaluar si mediante el decreto de divorcio dicho foro asumió jurisdicción original sobre los asuntos de custodia y relaciones filiales sobre el hijo del matrimonio Kabuka-Santiago de modo consistente con las disposiciones del PKPA. Veamos cuál es el estado de derecho de las Islas Vírgenes en materia de custodia y alimentos de menores.

El Código de las Islas Vírgenes dispone en cuanto a las modificaciones de órdenes finales en casos de divorcio o anulación que:

> At any time after a judgment is given the court, upon the motion of either party on notice, may set aside, alter or modify so much of the judgment as may provide alimony or for the appointment of trustees, for the care and custody of the minor children, or the nurture and education thereof [. . .].

16 V.I.C. sec. 110. De la anterior disposición estatutaria se desprende que un tribunal de las Islas Vírgenes que emite una sentencia de divorcio, mantiene jurisdicción para modificar las disposiciones de dicha sentencia en lo

relacionado a los alimentos o custodia de los menores; poder que descansa en la sana discreción del tribunal. *Towers v. Towers,* 16 V.I. 209, 220 (1979).

Por el contrario, si la sentencia de divorcio nada dispuso sobre asuntos relacionados a la custodia y pensión alimentaria, el tribunal carece de jurisdicción para modificar dichas disposiciones. Así, en *Brandy v. Brandy,* 21 V.I. 267, 269 (1985) el tribunal de Islas Vírgenes enfatizó que "[n]o Virgin Islands decision, though, can be found that holds that section 110 allows the court to order payment of support where as here, the original divorce decree is silent on that subject." De este modo, la jurisdicción del tribunal de Islas Vírgenes para modificar asuntos de custodia y alimentos de menores, podría verse limitada cuando estas disposiciones se fundamentan en acuerdos de separación independientes. *Viles v. Viles,* 316 F.2d 31 (V.I. 1963).

En algunas jurisdicciones de los Estados Unidos, donde existe legislación conocida como "no fault divorce laws" se promueve la utilización de los llamados "acuerdos de separación" o "acuerdos pre-divorcio" para regir los asuntos posteriores al divorcio. De esta forma se provee un mecanismo menos contencioso y antagónico para gobernar las relaciones entre los ex cónyuges. Mediante estos acuerdos se atienden asuntos relacionados con la división de bienes matrimoniales, determinaciones de custodia, alimentos, y demás incidentes posteriores al divorcio. M.J. Whaling, *The No Fault Concept: Is this the Final Stage*

*in the Evolution of Divorce?,* 47 Notre Dame Lawyer 959 (1972).

Las Islas Vírgenes es un ejemplo de una jurisdicción que autoriza este tipo de negociación entre los cónyuges previo al divorcio. Estos acuerdos no obligan al tribunal, que en su sana discreción podría ignorarlos si estima que no atienden cabalmente las necesidades de las partes, o en algún modo las perjudican. *Francois v. Francois,* 599 F.2d 1286 (V.I. 1979); *Viles v. Viles, supra.* Cuando un acuerdo de separación se incorpora a una sentencia de divorcio, el tribunal de Islas Vírgenes puede optar por fusionarlo a la sentencia ("merged into the decree"), o no fusionarlo ("not merged into the decree"). Si la decisión del tribunal es de fusionarlo, éste podrá entonces en ocasiones futuras, modificarlo o hacer valer las determinaciones del mismo. *Pfister v. Pfister,* 21 V.I. 533 (1985). En *Pfister v. Pfister, supra,* el tribunal de Islas Vírgenes expresó que "[i]f the agreement was merged in the decree, then the original claim . . . is extinguished, is superseded by the judgment. . ."

Por el contrario, si el acuerdo de separación no se fusiona o absorbe por la sentencia de divorcio dictada originalmente, los reclamos sobre el incumplimiento con lo estipulado no se extinguen con el decreto de divorcio; pero el tribunal carece de jurisdicción para modificar o hacer valer estos acuerdos como parte de la propia sentencia de divorcio. En este caso, procedería una acción independiente por incumplimiento contractual. *Pfister v.*

*Pfister, supra,* reiterado en *Morton v. Morton,* 34 V.I. 32 (1996).

En igual sentido tratan el asunto otras jurisdicciones. Cuando el acuerdo de separación se fusiona al decreto de divorcio, el contrato de estipulación se convierte en una orden de custodia o alimentos y pierde así su carácter contractual. Véase *Doherty v. Doherty,* 383 S.E.2d 759 (Va. App. 1989); *Smith v. Smith,* 589 S.E 2d 439 (Va. App. 2003); *Callen v. Callen,* 58 So.2d 462 (Ala. 1952); *Jeanes v. Jeanes,* 177 S.E.2d 537 (S.C. 1977); *Grant v. Grant,* 396 N.E.2d 1037 (Ohio App. 1977).[3]

Por el contrario, si un acuerdo de separación válido se incorpora a la sentencia de divorcio pero no se fusionó en ésta, el acuerdo sobrevive como un arreglo contractual independiente, y el tribunal no adquiere autoridad para efectuar ulteriores modificaciones a lo estipulado entre las partes, salvo que el propio acuerdo disponga lo contrario. S.Z. Moghadam, *Dismissing the Purpose and Public Policy Surrounding Spousal Support,* 56 Md. L. Rev. 927 (1995-1996). El remedio para las partes en estos casos es instar una acción independiente, luego del divorcio, para exigir el cumplimiento de lo pactado entre los

---

[3] Cabe destacar que en otras jurisdicciones de los Estados Unidos, al igual que en la nuestra, por razones de política pública, el tribunal siempre retiene jurisdicción sobre las cuestiones de custodia y alimentos de menores, irrespectivamente de cualquier acuerdo contractual entre las partes. Véase *Alfano v. Alfano,* 72 S.W.3d 104 (Ark.Ct.App. 2002); *Moseley v. Mosier,* 306 S.E.2d 624 (S.C. 1983); *Hay v. Hay,* 730 N.E.2d 787 (Ind. Ct.App. 2000); *Adamson v. Dodge,* 816 A.2d 455 (Vt. 2002)

cónyuges. *Siegel v. Siegel,* 197 A.D.2d 569 (N.Y. 1993); *Hoyt v. Hoyt,* 307 A.D.2d 621 (N.Y. 2003).

Para interpretaciones consistentes con lo anterior véase *Riffenburg v. Riffenburg,* 585 A.2d 627 (R.I. 1991), ("[T]he judiciary is without authority to modify alimony in a nonmerged separation agreement. . .In this unsurprising holding, we are essentially adhering to hundreds of years of contract theory that the modification of contracts can only be accomplished by the contracting parties. As the average contract that is fairly entered into is nonmodifiable by a court, so too is the separation agreement with respect to alimony."); *Engels v. Jacobs*, 297 A.D.2d 657 (N.Y.App. 2002), ("[C]hild support agreement arrived at pursuant to a stipulation of settlement, which is incorporated but not merged into the divorce decree, should not be disturbed absent a showing that the agreement was unfair or inequitable at the time that it was made, that an 'unanticipated and unreasonable change in circumstances has occurred resulting in a concomitant need' or that the child's right to receive adequate support is not being met."). En igual sentido, *Blitz v. Florida Dept. of Revenue ex rel Maxwell,* 898 So.2d 121 (Fla.App. 2005); *Carosone v. Carosone,* 688 A.2d 733 (Pa. 1997); *Sorace v. Sorace,* 655 A.2d 125 (Pa. 1995); *Knott v. Knott,* 806 A.2d 768 (Md.App. 2002); *Gold v. Gold,* 156 A.D.2d 874 (N.Y. 1989); *Johnston v. Johnston,* 465 A.2d 436 (Md. 1983).

Cuando el acuerdo de separación no se fusiona a la sentencia, el tribunal no adquiere jurisdicción sobre la

materia, consistente con las disposiciones del PKPA o el UCCJA. Conforme a dichos estatutos, el tribunal queda impedido entonces de intervenir con los asuntos relacionados a la custodia o relaciones paterno filiales. *Gestl v. Frederick,* 754 A.2d 1087 (Md. App. 2000); *State ex rel Morenz v. Kerr,* 818 N.E.2d 1162 (Ohio 2004). No existiendo un procedimiento de custodia pendiente en otra jurisdicción, un segundo foro puede asumir jurisdicción sobre la custodia del menor, si se cumplen con los requisitos jurisdiccionales de la ley federal.

Examinemos los hechos del presente caso a la luz de la anterior discusión doctrinal.

## IV

El peticionario, señor Kabuka, alegó que el tribunal de Islas Vírgenes mantiene jurisdicción sobre el caso ya qué fue el estado que emitió el decreto original de custodia y no ha renunciado a su jurisdicción. Veamos por qué no tiene razón.

En septiembre de 1999, en una escueta sentencia, la Corte Superior de las Islas Vírgenes decretó el divorcio entre las partes. En dicho decreto, el tribunal ordenó a las partes a cumplir con lo pactado en el acuerdo de separación en todo momento y en todo lugar. El tribunal claramente expresó que el acuerdo de separación no se fusionaba al decreto de divorcio. El decreto nada ordenó propiamente sobre la custodia, relaciones filiales, ni pensión alimentaria para el menor; habiéndose incluido todos estos asuntos en el acuerdo de separación. Conforme

el estado de derecho de las Islas Vírgenes, al no fusionarse el acuerdo de separación al decreto de divorcio, éste retuvo intacta su naturaleza contractual. En consecuencia, el tribunal quedó impedido de intervenir con estos asuntos. Cabe señalar que la validez del acuerdo de separación no ha sido impugnada ni está en controversia. Precisamente así lo resolvió el propio tribunal de Islas Vírgenes al declararse sin jurisdicción ante la solicitud de modificación de custodia presentada por el señor Kabuka.

Resulta forzoso concluir que el tribunal de Islas Vírgenes no adquirió, mediante el decreto de divorcio, jurisdicción original conforme al "Parental Kidnapping Prevention Act", sobre los asuntos relacionados a la custodia del menor. Al no existir en Islas Vírgenes un decreto original que se ajuste a las disposiciones del PKPA, lógicamente, no puede entenderse que el tribunal de Islas Vírgenes mantenga jurisdicción continua en virtud de la cláusula de continuidad de dicha legislación federal, tal y como argumenta el peticionario. No se cumple con el requisito de umbral para la jurisdicción continua, a saber: un decreto original de custodia o derechos de visita consistente con las disposiciones de la ley. 28 U.S.C. 1738A(d).

Ante esta situación, no existe en la actualidad un decreto de custodia pendiente en otro foro relacionado al menor Kabuka Santiago al que los tribunales de Puerto Rico deban otorgar entera fe y crédito, a tenor con el PKPA. Puerto Rico, tal y como resolvieron los tribunales de

Primera Instancia y Apelaciones, puede asumir jurisdicción en la materia de custodia y relaciones filiales de este niño.   Este menor reside en Puerto Rico desde hace aproximadamente seis años, y es Puerto Rico, indudablemente, su estado de residencia.   Corresponde al mejor bienestar del menor que asumamos jurisdicción, lo que hacemos consistente con el PKPA.

**V**

Por los fundamentos anteriormente expuestos, se expide el auto solicitado y se dicta sentencia confirmando la sentencia del Tribunal de Apelaciones, que a su vez confirmó la resolución del Tribunal de Primera Instancia, asumiendo jurisdicción sobre la materia de custodia y alimentos del menor Kabuka Santiago.   Se dictará la sentencia correspondiente.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilda Santiago González

    Recurrida

       v.

Salomón T. Setongo Kabuka

    Peticionario

CC-2005-853

SENTENCIA

San Juan, Puerto Rico, a 15 de diciembre de 2005

    Por los fundamentos expuestos en la Opinión que antecede los cuales se incorporan íntegramente a la presente, se expide el auto solicitado y se dicta sentencia confirmando la sentencia del Tribunal de Apelaciones.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre en el resultado sin opinión escrita.

                  Aida Ileana Oquendo Graulau
                  Secretaria del Tribunal Supremo