ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **JEAN MIGUEL BERMÚDEZ DEL VALLE**<br><br>Apelado<br><br>v.<br><br>**JENNYLEN MANAYTAY ESPINA**<br><br>Apelante | TA2025AP00353 | **APELACIÓN** acogida como *certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de **Carolina**<br><br>Civil Núm.: **CA2025RF00319**<br><br>Sobre: Custodia – Monoparental o Compartida, Alimentos |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de noviembre de 2025.

Comparece ante nos la señora Jennylen Manaytay Espina, (señora Manaytay Espina o peticionaria) y solicita la revisión de la *Minuta-Resolución* notificada el 25 de agosto de 2025, por el Tribunal de Primera Instancia, Sala Superior de Carolina. Mediante el referido dictamen, el foro primario se declaró con jurisdicción, de manera provisional, para atender una solicitud de custodia instada por el señor Jean Miguel Bermúdez del Valle (señor Bermúdez del Valle o recurrido).

Ahora bien, a pesar de que se instó un recurso de apelación, lo acogemos como un auto de *certiorari*, toda vez que se recurre de un pronunciamiento interlocutorio emitido por el foro de instancia. Sin embargo, se mantendrá el mismo alfanumérico asignado por la Secretaría de este Tribunal de Apelaciones por cuestiones de economía procesal.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto de *certiorari*.

**I.**

Según surge del expediente, la señora Manaytay Espina y el señor Bermúdez del Valle son los progenitores de ADBE, nacido en el 2017. Desde el 2018, el menor vivió con la madre en los Estados Unidos. En el 2024, las partes llegaron a un acuerdo temporero, mediante el cual el menor viajaría a Puerto Rico para cursar un año académico, desde agosto de 2024 a mayo de 2025. Ello, con el propósito de que ADBE compartiera con la familia paterna y como prueba para ver su desempeño en las escuelas de Puerto Rico.

El 29 de mayo de 2025, el señor Bermúdez del Valle incoó una Demanda sobre custodia, alimentos y patria potestad contra la señora Manaytay Espina. Alegó que ostentaba la custodia *de facto* del menor, toda vez que la progenitora reside en los Estados Unidos. Precisó que deseaba obtener la custodia monoparental de su hijo y que era quien contaba con la capacidad, recursos y facilidades para satisfacer sus necesidades básicas. También requirió del Tribunal una determinación en cuanto a la patria potestad para que esta fuera compartida entre ambos padres, así como un referido al Examinador(a) de Pensiones Alimenticias (EPA).

El 1 de julio de 2025, la señora Manaytay Espina contestó la demanda y, a su vez, presentó una reconvención, en la cual aceptó algunas alegaciones y negó otras.[1] Arguyó que el señor Bermúdez del Valle incumplió el acuerdo pactado en el 2024 y ejercía actos de enajenación parental desde mayo de 2025. Adujo que en este caso existen factores indispensables a considerar, como el diagnóstico de ADBE, que requiere de una atención especializada y de terapias ocupacionales. En esa dirección, esbozó que, de la experiencia en

---

[1] El señor Bermúdez del Valle contestó la reconvención el 14 de julio de 2025.

Puerto Rico se desprendía que el menor no había podido adaptarse y no había mejorado en sus destrezas motoras. Además, expuso que el señor Bermúdez del Valle no había identificado una institución académica adecuada para atender las necesidades del menor.

En la reconvención, la señora Manaytay Espina argumentó que el padre de ADBE decidió, unilateralmente, matricular al menor en el Colegio San Antonio de Padua en Río Piedras, en contravención con el acuerdo temporero. Añadió que estaba lista para que el menor regresara a residir con ella exclusivamente en el estado de Arizona y que tenía identificada una escuela pública con currículo Montessori, como posible opción para ADBE en el año escolar que comenzaba en agosto de 2025. Alegó que otorgarle a su favor la custodia monoparental obraba en el interés óptimo del menor.

La señora Manaytay Espina también solicitó al TPI un dictamen otorgándole la custodia provisional de ADBE, autorizando su traslado fuera de la jurisdicción de Puerto Rico para comenzar el periodo escolar y para que fuera evaluado conforme a su plan educativo individualizado, mientras el caso se dilucidaba en sus méritos. El señor Bermúdez del Valle se opuso a lo anterior y estableció que su interés solo perseguía brindarle estabilidad al menor en un ambiente saludable y que pudiera perpetuar vínculos con amistades y familiares cercanos, lo cual ocurrió por el tiempo en que este llevaba viviendo en Puerto Rico.

El 23 de julio de 2025 se comenzó el juicio en su fondo. De la *Minuta* se desprende que, como cuestión de umbral, el Tribunal tomó acción oportuna y temporalmente efectiva sobre el asunto de custodia provisional. En ese sentido, dispuso lo siguiente:

> **El Tribunal establece que no está impedido de intervenir en el asunto de custodia porque no existe decreto de ningún estado sobre ello y considerando que el menor ha residido en Puerto Rico del 2024 al 2025. Además, de existir un caso se pueden tomar las medidas de emergencia, según lo dispone la ley federal.** Se refiere de emergencia a la Unidad Social

para obtener más información sobre los asuntos relacionados a la custodia y escolares que es lo más apremiante al momento. No se tomará una determinación liviana o ligera. Ambas partes deben estar disponibles para cumplir con el calendario de la Unidad Social.

(Énfasis nuestro).

De la *Minuta* de la continuación del juicio celebrado 1 de agosto de 2025, se desprende que el juzgador de los hechos reiteró que no había caso abierto sobre la custodia del menor en ningún otro estado. Destacó que ADBE vivió en Puerto Rico el pasado año, por lo que era su "*home state*", conforme a la legislación federal. El Tribunal hizo constar que, en su deber de "*parens patriae*", debía determinar donde se matricularía al menor para darle estabilidad. Así, concluyó que:

> **El Tribunal toma en consideración los lazos que tiene el menor y que lleva un año viviendo en Puerto Rico. Además, siendo Puerto Rico el estado de residencia del menor se debe intervenir para atender todos los asuntos. Lo más recomendable es que el menor continue con la estabilidad que tiene at momento en Puerto Rico. Dicha determinación es provisional porque se evaluará la relocalización**. **Se aplicará la flexibilidad que cobija la ley de relocalización y traslado considerando que el menor ha vivido más tiempo en Estados Unidos que en Puerto Rico.** Los requerimientos están sometidos a la discreción de la Unidad Social, sin embargo, el Tribunal será laxo y flexible. Se ha aquilatado un contrato de arrendamiento por dos años y una ubicación que parece adecuada. Los progenitores han tenido igual interés en el menor y han establecido acuerdos distintos en diferentes tiempos. La inestabilidad surge por la ausencia de un decreto formal. Se buscará el mejor interés del menor [.] La Unidad Social evaluará el lugar donde el menor está mejor servido.
>
> [...]
>
> **Se ordena matricular al menor en el colegio que acuerden las partes con un currículo en inglés adaptado para el mejor bienestar del menor**. Los abogados deben colaborar con las partes para ese asunto. Se ha desfilado amplia prueba sobre conversaciones relacionadas a los colegios. **Las partes deben cumplir con el derecho de patria potestad. De las partes no establecer acuerdos sobre el colegio donde debe matricularse el menor el Tribunal lo determinará**. Los progenitores deben presentar la Planilla de Información Personal y Económica para establecer la proporción que le corresponde. Se han

evaluado varias escuelas con currículos en inglés que pueda servir al menor debido a sus necesidades.

[...]

(Énfasis nuestro).

Luego de varios trámites, el 14 de agosto de 2025, el señor Bermúdez del Valle incoó una *Moción Urgente en Solicitud de Remedios*. Allí, alegó que el Tribunal dispuso que el colegio a donde asista el menor debía ser acordado por ambos progenitores, pero la señora Manaytay Espina no le proveyó respuesta final a su sugerencia de matricularlo en el Colegio San Antonio de Padua. Arguyó que, además de darle opciones a la señora Manaytay Espina, le explicó que el aludido Colegio cumple con las necesidades cognitivas del menor, tiene un programa llamado *English Track* en el que el niño, además de recibir ayuda con la transición del idioma inglés al español, recibiría acomodo razonable para que su aprendizaje no se vea afectado en ningún aspecto. Particularizó que, a la fecha del escrito, todos los colegios en su demarcación territorial iniciaron clases y la señora Manaytay Espina no podía pretender dejar al arbitrio de la voluntad del destino una decisión tan importante como la educación de ADBE. Debido a lo anterior, informó que, como medida cautelar para que su hijo no se quedara sin colegio, lo matriculó en el Colegio San Antonio de Padua. La señora Manaytay Espina se opuso a la matrícula del menor en dicha institución educativa y propuso, a su vez, Dorado Academy, por entender que provee una educación apta para las necesidades de ADBE.

Así las cosas, el 20 de agosto de 2025, el TPI emitió una *Orden* en la cual estableció lo siguiente:

...

Evaluadas las posiciones de ambas partes, así como los autos del caso, el Tribunal determina que la opción que más propende al mejor bienestar del menor es su matrícula en el Colegio San Antonio.

Se ordena a ambas partes realizar todos los trámites necesarios para matricular al menor en el Colegio San Antonio.

Esta orden es de estricto cumplimiento.

Inconforme, la señora Manaytay Espina solicitó reconsideración. Sostuvo que procedía la desestimación de la demanda de referencia por falta de jurisdicción sobre ADBE y la materia. Arguyó que, si la ausencia del menor es temporal, como asistir a la escuela fuera del estado por un periodo definido, y el estado donde reside la progenitora seguía siendo su residencia principal, la jurisdicción exclusiva y continua se mantenía en el estado de origen. Ello, hasta tanto este la renunciara expresamente, según los requisitos del *Parental Kidnapping Prevention Act*.

Luego de que su solicitud de reconsideración fuese rechazada, la señora Manaytay Espina presentó el recurso de referencia. Le imputa al TPI la comisión del siguiente error:

Erró el TPI al no desestimar el caso CA2025RF00319 por carecer de jurisdicción para atender el mismo.

El 24 de octubre de 2025, el señor Bermúdez del Valle presentó su alegato, por lo que, con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A.**

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *León v. Rest. El Tropical*, 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos

atender mediante el referido recurso. *Scotiabank v. ZAF Corp.*, 202 DPR 478 (2019).[2]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

---

[2] El recurso de *certiorari,* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, supra.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59-60, 215 DPR __ (2025).

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, evaluar, tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada. Ello, para tomar la determinación si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97-98 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González*, 149 DPR 859, 866 (1999).

**B.**

El *Parental Kidnapping Prevention Act* (PKPA) es una ley federal que procura facilitar la ejecución de los decretos de los estados sobre custodia y derechos de visita, así como prevenir la competencia y el conflicto interjurisdiccional. Es un estatuto dirigido a regular el problema de remoción interestatal de menores por sus padres o parientes para obtener decretos judiciales favorables en otros foros. Además, el PKPA ocupa el campo en materia de determinaciones interestatales de custodia, por cuanto prevalece sobre cualquier otra legislación estatal. *Cancel Rivera v. González Ruiz*, 200 DPR 319 (2018). Véase, además, *Collazo Dragoni v. Noceda González*, 198 DPR 476 (2017); *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645, 651-652 (2016) y *Santiago v. Kabuka*, 166 DPR 526, 534 (2005).

Bajo el PKPA, los tribunales de los estados están obligados a darle entera fe y crédito a los dictámenes de custodia emitidos por sus equivalentes, siempre que éstos hayan sido emitidos consecuentemente con las disposiciones del estatuto y el foro original continúe teniendo jurisdicción sobre la materia de custodia del menor. 28 USCA sec. 1738A(a); *Collazo Dragoni v. Noceda González*, supra, pág. 483. La sección 1738A del PKPA establece lo relacionado a las determinaciones de custodia o el derecho de visita. El inciso (a) de la ley establece que la autoridad competente de cada estado debe ejecutar las determinaciones de custodia o derechos de visita de un tribunal emisor conforme a las disposiciones del PKPA. Advierte que estas no pueden ser modificadas a menos que se cumpla con las subsecciones (f), (g) y (h). *Cancel Rivera v. González Ruiz,* supra.

En *Santiago v. Kabuka,* supra, pág. 535, nuestro Tribunal Supremo, traduciendo la sección 1738A(c) del PKPA, dispuso que, para que una determinación de custodia sea compatible con el PKPA, el tribunal emisor debía tener jurisdicción para ello, conforme a las leyes de su estado. Asimismo, se debía cumplir con una de las siguientes circunstancias:

A) Ese estado (i) es el estado de residencia del menor a la fecha en que comenzaron los procedimientos, o (ii) ha sido el estado de residencia del menor seis meses antes de la fecha en que comenzaron los procedimientos y el menor se encuentra fuera del estado porque ha sido trasladado o retenido por una de las partes o por otras razones, y una de las partes aún reside en el estado que emitió el decreto;

(B) (i) surge que ningún otro estado tiene jurisdicción bajo el párrafo (A), y (ii) para el mejor bienestar del menor, el tribunal de dicho estado asume jurisdicción debido a que (I) el menor y sus padres, o el menor y al menos uno de los litigantes, tiene contactos significativos con el estado, más allá de la mera presencia física en el mismo, y (II) está disponible en ese estado evidencia sustancial relativa al cuidado, protección, entrenamiento y relaciones personales presentes o futuras del menor;

(C) el menor está físicamente presente en ese estado, y (i) ha sido abandonado, o (ii) existe una emergencia que

requiera su protección porque el niño, un hermano o uno de sus padres, ha recibido amenazas o ha estado expuesto a maltrato o abuso;

(D) (i) surge que no hay otro estado con jurisdicción bajo los párrafos (A), (B), (C) o (E), u otro estado ha declinado ejercer jurisdicción bajo el fundamento de que el estado cuya jurisdicción está en controversia es el foro más apropiado para determinar la custodia del menor, y (ii) es para el mejor bienestar del menor que ese tribunal asuma jurisdicción; o

(E) el tribunal tiene jurisdicción continua conforme al inciso (d) de esta sección.

Por lo tanto, al momento de examinar si un decreto original de custodia fue emitido válidamente, se evaluará primero si se cumple con el requisito de residencia y así sucesivamente. *Collazo Dragoni v. Noceda Gonzalez*, supra, pág. 484. De lo anterior queda claro que el PKPA reconoce cuatro (4) bases jurisdiccionales, a saber: jurisdicción del estado de residencia del menor, jurisdicción por contactos significativos con el foro, jurisdicción cuando no existe otro estado con jurisdicción o ha declinado ejercerla, y jurisdicción para situaciones en las que el menor se encuentra en estado de emergencia. *Santiago v. Kabuka*, supra, págs. 535-536.

La jurisprudencia ha definido el estado de residencia como el lugar donde el niño o la niña ha hecho amistades, asiste a la escuela, recibe asistencia médica y su vida se ha desarrollado. *Ortega, Jr. v. Morales Ortega*, 131 DPR 783, 792 (1992). Por ello, se entiende que en el estado residencia del menor es donde con mayor probabilidad está disponible la evidencia que se requiere para hacer una adecuada determinación de custodia. Según el PKPA, el *home state* es aquel estado o jurisdicción en la que el menor haya vivido con uno o ambos padres, o con un tutor, al menos durante seis (6) meses consecutivos antes de la fecha de inicio de los procedimientos de custodia o fijación de derechos de visita. 28 USCA sec. 1738A, inciso (b)(4). (Traducción del Tribunal Supremo en *Cancel Rivera v. González Ruiz,* supra).

Inicialmente, nuestro Tribunal Supremo destacó que, de existir conflicto con respecto a cuál es el requisito jurisdiccional aplicable de acuerdo con el PKPA, siempre deberá prevalecer el del estado residencia del menor. *Ortega, Jr. v. Morales Ortega,* supra, pág. 792. Ahora bien, en *Santiago v. Kabuka,* supra, pág. 536, nuestro Máximo Foro determinó que:

> … si bien el PKPA brinda preferencia al *home state* del menor sobre cualquier otra jurisdicción, la ley confiere jurisdicción continua al estado o foro que haya emitido un decreto original de custodia para que haga valer o revise sus determinaciones originales. 28 USCA sec. 1738A(d). Debe entenderse que ante la existencia de un decreto original que se ajuste a las disposiciones del estatuto, la jurisdicción continua es el criterio principal, aun cuando ésta no sea la jurisdicción de residencia del menor. ("*In these actions the jurisdictional basis [providing continuous jurisdiction] is hierarchically superior even to home state jurisdiction*"). Manuel E. Moraza Choisne, *Juridical Solutions in the U.S.A. for Parental Kidnapping in Child Custody Cases*, 24 Rev. Jur. UIPR 309, 319 (1990).

Cabe destacar que un Tribunal conserva jurisdicción continua solo si se cumplen los siguientes requisitos: un decreto original de custodia compatible con las disposiciones del PKPA; que el foro original mantenga jurisdicción bajo sus propias leyes, y que dicho foro continúe siendo el estado de residencia del menor o al menos de una de las partes.

Como excepción a la norma, el PKPA reconoce jurisdicción a un foro para modificar determinaciones de custodia formuladas por otros foros cuando el estado o jurisdicción que procura variar el decreto ostenta jurisdicción para hacer determinaciones de custodia, y el tribunal del otro foro ha perdido jurisdicción o ha declinado ejercerla. 28 USCA sec. 1738A(f) y (h). Se trata de una excepción débil, pues exige que el foro inicial pierda la jurisdicción o renuncie a ella. *Collazo Dragoni v. Noceda González*, supra, pág. 485. Ello implica que, una vez comienza un procedimiento de custodia en un estado o jurisdicción y éste es compatible con las disposiciones del PKPA, y dicho procedimiento se encuentra

pendiente, un segundo estado o jurisdicción queda impedido de ejercer jurisdicción, o debe declinar ejercerla. 28 USCA 1738A(g); *Santiago v. Kabuka,* supra, pág. 537.

Así, en *Collazo Dragoni v. Noceda González*, supra, al atender una controversia sobre la jerarquía jurisdiccional que establece el PKPA, el Tribunal Supremo estableció que, si el dictamen original de custodia se emitió conforme a los parámetros del PKPA, los tribunales de otro estado no podrán modificarlo. **Se reiteró que la jurisdicción continua es la norma que prevalece sobre el estado de residencia del menor, mientras se cumpla con las disposiciones y las bases jurisdiccionales del estatuto federal y que ese estado, en donde se emitió el decreto original, se mantenga como el estado de residencia del menor o una de las partes**. (Énfasis nuestro). La importancia jurisdiccional del estado de residencia radica más bien en la determinación de si el dictamen original de custodia fue emitido de forma compatible con la ley, pues se debe evaluar si se cumplieron con las bases jurisdiccionales del inciso (c). Ante ello, si el dictamen original cumplió con la base jurisdiccional preferida (estado de residencia), los tribunales de otro estado no podrán modificarlo. *Íd.,* pág. 491.

Ahora bien, existen situaciones en las cuales los tribunales han rechazado otorgarles entera fe y crédito a decretos de custodia de otros foros. A modo de ejemplo, en *Fernández v. Rodríguez,* 411 N.Y.S.2d 134 (1978), la Corte Suprema del estado de Nueva York resolvió que el decreto de custodia original emitido por el tribunal de Puerto Rico no se ajustó a los estándares del *Uniform Child Custody Jurisdiction Act* (UCCJA), por cuanto rechazó dar entera fe y crédito al dictamen emitido en Puerto Rico.[3] El tribunal de Nueva

---

[3] En un esfuerzo por remediar las deficiencias del UCCJA, en 1980 el Congreso de Estados Unidos aprobó el PKPA, cuyas disposiciones se derivan del UCCJA e impone a los estados el deber de otorgar entera fe y crédito, a través de un patrón uniforme, a decretos de custodia de otros estados. Véase, L.M. DeMelis, *Interstate*

York determinó que el dictamen de Puerto Rico no fue compatible con los parámetros del UCCJA por consideraciones de debido proceso de ley y, además, porque no se cumplían con los requisitos jurisdiccionales. Véase, además, Opinión de Conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez en *Infante v. Montalvo*, 165 DPR 757, 774-775 (2005) (Sentencia).

### III.

El asunto que hoy atendemos versa sobre una cuestión revestida de alto interés público. En esta ocasión debemos analizar si el TPI erró o abusó de su discreción al establecer que Puerto Rico es el estado de residencia de ADBE; asumir jurisdicción sobre la materia de custodia y determinar, de forma provisional, que lo más recomendable era que el menor continúe con la estabilidad que tiene al momento en Puerto Rico. El foro *a quo* hizo hincapié en que próximamente se evaluaría la relocalización y se aplicaría la flexibilidad que cobija la ley de relocalización y traslado, considerando que ADBE ha vivido más tiempo en Estados Unidos que en Puerto Rico. A su vez, el foro de instancia resaltó que asumió jurisdicción para eliminar la inestabilidad existente en el caso, al no existir un decreto formal de custodia en ningún estado y que la Unidad Social evaluará el lugar donde el menor estará mejor servido.

En su recurso, la peticionaria arguye que el TPI no poseía jurisdicción para atender la controversia traída a su atención, toda vez ADBE residía con ella en Estados Unidos, y fue solo por un acuerdo de las partes que este fue enviado a Puerto Rico provisionalmente. Destaca que el recurrido, aun cuando aceptó el acuerdo, de forma unilateral lo incumplió. Sostiene que, ni el estado de residencia del menor, ni la jurisdicción de dicho estado se pierden automáticamente, aun cuando ADBE vivió con su padre en Puerto

---

*Child Custody and the Parental Kidnapping Prevention Act: the Continuing Search for a National Standard*, 45 (Núm. 5) Hastings L.J. 1329 (1994).

Rico durante un año escolar. Acentúa que el "estado de residencia principal" es donde el menor ha vivido con uno de los padres durante al menos seis (6) meses consecutivos antes de que se inicie una acción de custodia. Hace hincapié en que la ausencia temporal del menor no cambió el estado de residencia principal para efectos de jurisdicción.

Asimismo, la peticionaria esboza que, si existe una orden judicial sobre custodia o tiempo compartido, los padres deben presentar un acuerdo formal para la reubicación, evitando futuros conflictos jurisdiccionales si el acuerdo se vuelve permanente. Además, es su contención que la jurisdicción exclusiva y continua se mantiene en el estado de origen hasta que tanto éste decida renunciarla expresamente, según los requisitos del PKPA y que en el caso de autos no aplica ninguna de las excepciones por emergencia que provee la PKPA.

Por su parte, el recurrido está de acuerdo con la decisión impugnada. Esencialmente sostiene que Puerto Rico es la jurisdicción en donde con mayor probabilidad está disponible la evidencia que se requiere para hacer una adecuada determinación de custodia, tomando en consideración lo más conveniente para el menor. Detalla que, para efectos del PKPA, Puerto Rico se considera el *home state* de su hijo y que al presente ese es su lugar de residencia. Entiende que el foro de instancia actuó dentro de los parámetros legales, conforme a la PKPA.

El caso de autos revela un importante conflicto interjurisdiccional. Según expuesto, la norma es que, si un tribunal de otra jurisdicción emitió una orden de forma cónsona con el PKPA, los tribunales de Puerto Rico no pueden alterarla.

En primer orden, cabe destacar que del récord del caso surge que, hasta el momento, el estado donde reside la peticionaria no ha

ejercido, ni declinado, jurisdicción sobre la materia de custodia de ADBE.

Un análisis sosegado de la legislación federal PKPA y la jurisprudencia que la ha interpretado, así como las particularidades del caso de autos, nos lleva a concluir que no procede intervenir con el **dictamen provisional** impugnado. Veamos porqué.

Como se sabe, los tribunales, en protección, y para beneficio de los menores de edad, y en el ejercicio de su poder de *parens patriae*, cuentan con amplias facultades y discreción en estos asuntos. *Martínez v. Ramírez Tió*, 133 DPR 219 (1993). El derecho a la custodia está necesariamente subordinado al poder de *parens patriae* que poseen los tribunales. *Muñoz Sánchez v. Báez de Jesús,* supra. En vista de ello, el Tribunal Supremo de Puerto Rico ha expresado que el principio cardinal que debe guiar a los tribunales en las determinaciones de custodia debe responder al mejor bienestar del menor. *Maldonado v. Burris*, 154 DPR 161 (2001); *Sánchez Cruz v. Torres Figueroa*, 123 DPR 418 (1989).

En la presente causa, el TPI analizó detenidamente las características que exhibe el caso para poder tomar una decisión concienzuda, no ligera, sobre la jurisdicción en el asunto bajo su consideración. En esa dirección, consideró que ADBE lleva un año viviendo en Puerto Rico y estableció que es esa jurisdicción el estado de su residencia. Por consiguiente, concluyó que lo mejor para el menor es continuar con la estabilidad que tiene hasta el momento en Puerto Rico, no sin antes destacar que dicha determinación es una provisional, pues se estaría evaluando la posibilidad de la relocalización.

En ese contexto, colegimos que la decisión provisional del TPI fue una razonable, dada la incertidumbre que existía en cuanto a la educación de ADBE. Nótese que el razonamiento del juzgador de los hechos fue basado en un asunto protector temporero, hasta tanto

se determine en definitiva cuál es el foro con jurisdicción para resolver la controversia de la custodia.

Al ser la expedición del auto de *certiorari* de índole discrecional, resolvemos que, de acuerdo con los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, no hay razón que motive nuestra intervención con el pronunciamiento impugnado en esta etapa de los procedimientos. La actuación del TPI no fue arbitraria ni caprichosa.

### IV.

Por los fundamentos antes expuestos, se deniega la expedición del auto de *certiorari*. En consecuencia, se devuelve el caso al TPI para la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones