Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| JIHEE CHLOE LIM<br><br>Peticionaria<br><br>JESSE KU KWON<br><br>Recurrido<br><br>EX PARTE | KLCE202500661 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2023RF01262<br><br><br>Sobre:<br>Divorcio |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de julio de 2025.

Comparece ante nos la señora Jihee Chloe Lim (señora Lim o peticionaria) y nos solicita que revisemos una *Resolución* emitida y notificada el 29 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] Mediante el referido dictamen, el foro primario determinó retener jurisdicción continua para atender una solicitud de custodia instada por la parte recurrida.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* y *revocamos* el dictamen recurrido.

**I.**

Según surge del expediente, la señora Lim y el señor Jesse Ku Kwon (señor Kwon o recurrido) procrearon una hija, A.S.Y.K. nacida el 1 de junio de 2010 en el estado de Connecticut, Estados Unidos de América. El 25 de septiembre de 2023, el TPI emitió una *Resolución* en la cual se recogieron los acuerdos habidos entre las partes de epígrafe referentes a la patria potestad, custodia y relaciones filiales.[2] Las partes acordaron que ambos compartirían la patria potestad y

---

[1] Apéndice de *Recurso de Certiorari*, Anejo XII, págs. 74-83.
[2] Apéndice de *Recurso de Certiorari*, Anejo IX, págs. 46-48.

custodia de A.S.Y.K. El señor Kwon ejercería la custodia de la menor por doce días al mes, comenzando el primer sábado del mes a las 9:00 a.m. hasta el segundo miércoles del mes a las 7:00 p.m. De igual forma, las partes acordaron que la señora Lim se relocalizaría junto a A.S.Y.K. al estado de Pensilvania, donde las partes vivieron antes de mudarse a Puerto Rico. Las partes pactaron, además, que las relaciones paternofiliales se llevarían a cabo en el estado de Pensilvania.

El 24 de febrero de 2025, el señor Kwon presentó una *Moción urgente en solicitud de custodia monoparental provisional de emergencia.*[3] En síntesis, el recurrido alegó que desde el 14 de febrero de 2025 la menor A.S.Y.K. se encontraba bajo su custodia cuando le correspondía a la señora Lim ejercerla. Lo anterior responde a lo que el señor Know cataloga como un "un grave y lamentable incidente de maltrato físico y emocional" por parte de la peticionaria hacia la menor A.S.Y.K. El recurrido informó que A.S.Y.K. huyó de su hogar el 13 y 14 de febrero de 2025 luego de discutir con la peticionaria. Informó que en ambas ocasiones, A.S.Y.K. lo contactó por llamada telefónica para informarle lo sucedido y para que fuera por ella. De acuerdo con el señor Kwon, la Policía de Pensilvania intervino en el suceso del 14 de febrero a petición de la señora Lim. El recurrido alegó que el 21 de febrero de 2025, recibió una llamada de la Oficina de Servicios Humanos de Pensilvania. Le informaron que en los días siguientes, recibiría la visita de una trabajadora social para investigar el caos que les fue referido debido al informe policial que recibieron la semana antes.

De otro lado, el recurrido informó que el 20 de febrero de 2025, la señora Lim acudió al TPI mediante "*Petitioner's Motion for Default with the Resolution of September 25, 2023*". En esta, la peticionaria le

---

[3] Apéndice de *Recurso de Certiorari*, Anejo I, págs. 1-5.

solicitó al foro de instancia la imposición de sanciones contra el señor Know por haber incumplido con la *Resolución* del 25 de septiembre de 2023 toda vez que A.S.Y.K. pernoctó en el estado de Nueva York sin previo aviso y sin su consentimiento.

Por todo esto, el señor Kwon le solicitó al TPI la custodia monoparental provisional de A.S.Y.K. y que refiriera el asunto a la Unidad Social para que se investigaran los incidentes de maltrato de la señora Lim contra la menor A.S.Y.K. También solicitó que se obtuviera el informe de la Policía de Pensilvania, que se entrevistara a la trabajadora social asignada al caso por la Oficina de Servicios Humanos de Pensilvania y que se entrevistara a A.S.Y.K. De igual forma, le solicitó al TPI que le ordenara a la señora Lim recibir tratamiento psicológico y/o psiquiátrico, la igual que terapia para el manejo de coraje y emociones para mejorar sus capacidades protectoras hacia su hija. Asimismo, el recurrido solicitó que se declarara No Ha Lugar la solicitud de sanciones presentada por la peticionaria.

El 6 de marzo de 2025, el señor Kwon presentó una *Moción urgente en solicitud de autorización para viaje.*[4] El recurrido informó que tanto a él como a A.S.Y.K. les interesaba viajar a Puerto Rico durante las vacaciones de primavera, del 19 al 29 de marzo de 2025. Alegó que la informó a la señora Lim sobre el viaje y que esta se opuso sin mayor explicación. Por entender que la negativa de la peticionaria era irrazonable y contraria a las estipulaciones alcanzadas en la *Resolución* del 25 de septiembre de 2023, el recurrido solicitó la intervención del TPI en el asunto.

El mismo 6 de marzo de 2025, la señora Lim compareció mediante *Moción en cumplimiento de orden y solicitud de que decline ejercer jurisdicción.*[5] En esencia, la peticionaria alegó que el señor

---

[4] Apéndice de *Recurso de Certiorari,* Anejo III, págs. 7-8.
[5] Apéndice de *Recurso de Certiorari,* Anejo IV, págs. 9-18.

Kwon realizó falsas representaciones en su solicitud de custodia monoparental con hechos que distaban diametralmente con la realidad de unos hechos que el recurrido no presenció. De manera que, la señora Lim se opuso a la solicitud del recurrido y negó categóricamente las acusaciones de maltrato en su contra. Además, le solicitó al TPI que renunciara a su jurisdicción toda vez que no se cumplían los requisitos de jurisdicción continua ya que Pensilvania era el foro en mejor posición para asumir jurisdicción sobre el asunto. La señora Lim adujo que tanto ella, como A.S.Y.K. y el señor Kwon residen en el estado de Pensilvania. Arguyó que el recurrido apenas pasa unos días al mes en Puerto Rico para propósitos de la Ley 60 de 2022 por sus efectos contributivos. Por lo que, argumentó que el señor Kwon no tenía contactos mínimos en nuestra jurisdicción. Además, la peticionaria adujo que ni ella ni A.S.Y.K. tenían vínculo alguno con Puerto Rico, no tenían familia en la isla ni lazos de algún tipo.

La señora Lim arguyó que de acuerdo con el Parental Kidnapping Prevention Act, *infra*, existía un orden preferencial sobre las bases jurisdiccionales, siendo el estado de residencia del menor el primero en el orden. La peticionaria reconoció que, ciertamente, las partes acordaron que el TPI tendría jurisdicción para dictar resoluciones de custodia y relaciones paternofiliales y en ese sentido, sería correcto concluir que nuestro sistema de tribunales tiene jurisdicción continua. Ello no obstante, la señora Lim argumentó que en ese preciso momento lo más prudente y lo que mejor serviría a los intereses de A.S.Y.K. sería que el TPI declinara ejercer su jurisdicción. La peticionaria añadió que, si las relaciones paternofiliales se llevaban a cabo en el estado de Pensilvania, fue por acuerdo entre las partes y no era en aras de obtener un decreto de custodia favorable en otro estado. Inclusive, la señora Lim señaló que, de acuerdo con el relato del señor Kwon, se habían involucrado a las autoridades del

estado de Pensilvania en el asunto por lo que, le resultaba lógico que el asunto fuese atendido en dicho estado.

El 14 de marzo de 2025, el TPI emitió una *Resolución* sobre la solicitud que realizó el señor Kwon para viajar a Puerto Rico durante las vacaciones de primavera con A.S.Y.K.[6] Por entender que Puerto Rico era el único foro con jurisdicción sobre A.S.Y.K., concluyó que le correspondía atender la solicitud de autorización sobre viaje. Así las cosas, el TPI determinó que la señora Lim no presentó planteamientos relacionados con el bienestar óptimo de la menor que justificaran denegar la autorización. Por ello, el TPI autorizó el viaje para las fechas solicitadas y ordenó el regreso puntual de la menor al estado del Pensilvania.

El 21 de marzo de 2025, la señora Lim presentó una moción reiterando su solicitud para que el TPI declinara ejercer su jurisdicción.[7] En esta ocasión, la peticionaria puntualizó que aunque no existía un conflicto interjurisdiccional sí existía un conflicto intergubernamental. Esto es, el equivalente al Departamento de la Familia en Pensilvania estaba atendiendo la situación ocurrida con A.S.Y.K. en el estado de Pensilvania. Enfatizó, además, la aplicabilidad de la doctrina de "*Forum Non Conveniens*" en el caso y que trasladar el caso al estado de Pensilvania redundaba en el mejor interés para la menor. Por su parte, el señor Kwon presentó su oposición el 28 de marzo de 2025.[8]

El 15 de abril de 2025, la señora Lim presentó una *Moción informativa sobre registración en el condado de Montgomery*.[9] La peticionaria informó que presentó ante la corte del condado de Montgomery, Pensilvania una moción intitulada *Notice of Contest Registration of Interstate Child Custody Determination*. Ante, esto, la

---

[6] Apéndice del *Recurso de Certiorari*, Anejo VI, págs. 20-21.
[7] Apéndice del *Recurso de Certiorari*, Anejo VII, págs. 22-31.
[8] Apéndice del *Recurso de Certiorari*, Anejo VIII, págs. 32-39.
[9] Apéndice del *Recurso de Certiorari*, Anejo IX, págs. 40-66.

señora Lim le solicitó al TPI que refiriera el caso al foro judicial de Pensilvania. El 21 de abril de 2025, el señor Kwon presentó su *Réplica.*[10]

El 28 de abril de 2025, la señora Lim presentó una *Urgente moción informativa.*[11] La peticionaria informó que la corte del Condado de Montgomery emitió una *Orden* mediante la cual determinó ejercer jurisdicción de emergencia temporera, sujeto a una consulta con el TPI. Por ello, la señora Lim le reiteró al foro primario su solicitud de no ejercer su jurisdicción.

El 29 de abril de 2025, el TPI emitió una *Resolución* en la cual destacó varias incidencias procesales, a saber:[12]

1. Este caso inició como una Demanda de Divorcio presentada por la señora Lim el 31 de agosto de 2023.

2. El 6 de septiembre de 2023, luego de que el señor Kwon se sometiera voluntariamente a la jurisdicción de este Tribunal, las partes presentaron moción conjunta en la que, bajo juramento, informaron las estipulaciones que habían alcanzado respecto a la Custodia, Patria Potestad y Relaciones Filiales con su hija, [Nombre omitido por este Tribunal]. Cabe destacar que, conforme surge de esa moción conjunta, las partes llegan a esos acuerdos en consideración al interés de la señora Lim de relocalizarse con la menor al estado de Pennsylvania.

3. Como parte de las estipulaciones alcanzadas, las partes acordaron ejercer de forma compartida la Custodia y la Patria Potestad sobre su hija.

4. Asimismo, acordaron que **efectivo a 1ro. de septiembre de 2023**, la menor se relocalizaba a Pennsylvania junto a su madre. [Énfasis en original]

5. A pesar de ello, **las partes acordaron que Puerto Rico retendría la jurisdicción sobre todos los asuntos de la menor**. [Énfasis en original]

6. El 25 de septiembre de 2023, las partes presentaron moción conjunta modificando la causal de Divorcio de Ruptura Irreparable a Consentimiento Mutuo. En lo pertinente a la menor, las partes incorporaron en su Petición Conjunta todo lo ya establecido en la Estipulación presentada el 6 de septiembre de 2023.

---

[10] Apéndice del *Recurso de Certiorari*, Anejo X, págs. 67-70.
[11] Apéndice del *Recurso de Certiorari*, Anejo XI, págs. 71-73.
[12] Apéndice del *Recurso de Certiorari*, Anejo XIII, págs. 74-83.

7. El 25 de septiembre de 2023, emitimos Resolución acogiendo todas las estipulaciones de las partes respecto a la menor. En el inciso (11) de nuestra Resolución establecimos que, cónsono con lo acordado por las partes, Puerto Rico retenía la jurisdicción exclusiva sobre todos los asuntos de la menor.

8. El mismo 25 de septiembre de 2023 dictamos Sentencia decretando el Divorcio entre las partes.

9. El 8 de marzo de 2024, cuando la menor llevaba ya más de seis meses residiendo en Pennsylvania, la señora Lim presentó ante nos solicitud de autorización para relocalización, al amparo de las disposiciones de la Ley 102 de 2018. En su escrito la señora Lim solicitó autorización para trasladarse con la menor a Corea del Sur.

10. El 1ro. de abril de 2024, el señor Kwon presentó moción en oposición a la autorización de relocalización.

11. El 23 de abril de 2024, referimos la solicitud de la señora Lim a la Unidad Social para el estudio social sobre Relocalización.

12. Mediante Orden de 31 de mayo de 2024, ordenamos a la Unidad Social que incorporara a su estudio social ciertas alegaciones de Enajenación Parental levantadas por la señora Lim.

13. El 9 de julio de 2024, la Unidad Social sugirió que se ampliara el estudio social en curso a los fines de evaluar la ubicación actual de la menor en Pennsylvania, a los fines de conocer el capital social, escuela y los vínculos sociales y sentimentales de la menor. Mediante Orden concedimos a las partes la oportunidad de expresar su postura en cuanto a la solicitud de ampliación del estudio social.

14. El señor Kwon, aunque no lo entendía necesario, no se opuso a la ampliación del estudio social.

15. La señora Lim estuvo de acuerdo con la ampliación del estudio social para que cubriera las condiciones de vida de la menor en Pennsylvania e, incluso, fue la que seleccionó el recurso que condujo el estudio en Pennsylvania, Sr. José Galarza Flores.

16. El 1ro. de octubre de 2024, el señor Galarza Flores presentó su Estudio Interagencial.

17. El 9 de octubre de 2024, la Trabajadora Social Taisha Vélez Vázquez, de la Unidad Social del Tribunal de Puerto Rico, produjo su Informe Social, recomendado que no se autorice la relocalización de la menor a Corea del Sur. Mediante Orden de 10 de octubre de 2024, concedimos a ambas partes la oportunidad de expresar sus posturas con

respecto a los hallazgos y recomendaciones del Informe Social.

18. Cabe destacar que durante todo el proceso ante la Unidad Social el Tribunal proveyó a la señora Lim Interpretes certificados. El señor Kwon produjo los [Intérpretes] para sus entrevistas.

19. El 30 de octubre de 2024, el señor Kwon presentó moción allanándose a que acojamos las recomendaciones del Informe Social.

20. El 12 de noviembre de 2024, la señora Lim también presentó moción allanándose a que acojamos las recomendaciones del Informe Social. La señora Lim alegó, de manera general, que el Informe adolecía de errores y omisiones y que no recogía la realidad del entorno social. A pesar de ello, sin embargo, la señora Lim se allanó; no objetó o impugnó las recomendaciones; tampoco hizo planteamiento alguno en cuanto a la gestión de los Intérpretes o de que sus expresiones y manifestaciones durante las entrevistas fuesen tergiversadas.

21. El 20 de noviembre de 2024 emitimos Resolución denegando el traslado de la menor a Corea del Sur.

El TPI determinó que ejercería su jurisdicción sobre la menor A.S.Y.K. Razonó que aun cuando el Parental Kidnapping Prevention Act, *infra*, designaba como el estado de residencia del menor como el foro más conveniente, lo cierto era que las partes habían acordado que Puerto Rico sería el foro para dilucidar los asuntos sobre custodia y relaciones paternofiliales. Además, señaló que la propia señora Lim acudió al foro de instancia para relocalizar a A.S.Y.K. al estado de Pensilvania.

Inconforme, la señora Lim solicitó reconsideración del dictamen el 14 de mayo de 2025.[13] Por su parte, el señor Kwon presentó su oposición el 29 de mayo de 2025.[14] Finalmente, el 30 de mayo de 2025, el TPI emitió una *Resolución interlocutoria* mediante la cual denegó la solicitud de reconsideración de la peticionaria.[15]

Inconforme aun, la señora Lim acudió a este foro apelativo intermedio y nos planteó la comisión de los siguientes errores:

---

[13] Apéndice del *Recurso de Certiorari*, Anejo XIII, págs. 84-116.
[14] Apéndice del *Recurso de Certiorari*, Anejo XV, págs. 118-127.
[15] Apéndice del *Recurso de Certiorari*, Anejo XVI, pág. 128.

**PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL OTORGAR NO HA LUGAR LA MOCIÓN DE RECONSIDERACIÓN PRESENTADA POR LA PETICIONARIA SIN EVALUAR NI DISCUTIR LA APLICABILIDAD DE LA DOCTRINA DE FORUM NON CONVENIENS AL PRESENTE CASO.**

**SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL FUNDAMENTAR SU DETERMINACIÓN DE RETENER LA JURISDICCIÓN CONTINUA BAJO EL PARENTAL KIDNAPPING PREVENTION ACT ÚNICAMENTE EN LA ALEGADA RESIDENCIA DEL SR. KWON EN PUERTO RICO, SIN CONSIDERAR QUE LAS CIRCUNSTANCIAS PARTICULARES DEL CASO AMERITAN DECLINAR LA JURISDICCIÓN A FAVOR DEL ESTADO DE PENSILVANIA.**

**TERCER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL VIOLENTAR EL DEBIDO PROCESO DE LEY DE LA PETICIONARIA AL NEGARSE A DECLINAR SU JURISDICCIÓN, OBLIGÁNDOLA ASÍ A LITIGAR EN UN FORO INCONVENIENTE.**

**CUARTO SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA POR INCURRIR EN UN ABUSO DE DISCRECIÓN AL OMITIR UN ANALISIS DETALLADO SOBRE LA INAPLICABILIDAD DE LA DOCTRINA DE *FORUM NON CONVENIENS,* SEGÚN LO EXIGE NUESTRA JURISPRUDENCIA.**

El señor Kwon compareció mediante escrito en oposición. Contando con la comparecencia de ambas partes, procedemos a resolver la controversia ante nuestra consideración.

**II.**

**A. *Certiorari***

El *certiorari* es un vehículo procesal extraordinario que permite que un tribunal de mayor jerarquía revise las determinaciones de un tribunal inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *McNeill Healthcare LLC v. Municipio De Las Piedras,* 206 DPR 391, 404 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Medina Nazario v. McNeill Healthcare LLC,* 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012). Contrario al recurso de apelación, el foro apelativo posee la

facultad discrecional de expedir o denegar el auto de *certiorari*. *Torres González v. Zaragoza Meléndez, supra*, pág. 847.

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, dispone taxativamente las instancias en las que el Tribunal de Apelaciones posee autoridad para expedir el auto de *certiorari* sobre un asunto interlocutorio civil. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation, et als.*, 202 DPR 478 (2019). En lo pertinente, si el asunto interlocutorio planteado no se encuentra dentro de las instancias que el ordenamiento jurídico otorga autoridad para intervenir, no se puede atender la controversia. El referido artículo dispone que el foro apelativo intermedio solamente expedirá un recurso de *certiorari* relacionado a una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, R. 56 y 57 o a la denegación de una moción de carácter dispositivo. Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1.

A su vez, a modo de excepción, este tribunal puede revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la que esperar a la apelación constituye un fracaso irremediable de la justicia. *Íd.*

El propósito de esta regla es evitar la dilación que causaría la revisión judicial de las controversias que se podrían plantear en una apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als., supra*, pág. 486; *800 Ponce de León v. AIG, supra*, pág. 175; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 593-594 (2011). Ahora bien, "el hecho de que un asunto esté comprendido dentro de las materias susceptibles a revisión no justifica la expedición del auto sin más". *Medina Nazario v. McNeill Healthcare LLC, supra.*

Por otro lado, la Regla 40 del *Reglamento del Tribunal de Apelaciones*, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que debemos considerar en el ejercicio de la facultad discrecional al atender una petición de *certiorari.* A saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En la eventualidad que el tribunal apelativo deniegue la expedición del auto de *certiorari*, no será necesario exponer las razones para tal determinación. *Rivera Figueroa v. Joe's European Shop, supra*, a la pág. 594; *IG Builders et al. v. BBVAPR, supra*, a la pág. 336. En tal caso, el foro apelativo intermedio no asume jurisdicción sobre el asunto planteado ni dispone del mismo en sus méritos. *Torres González v. Zaragoza Meléndez, supra*, a la pág. 848; *McNeill Healthcare LLC v. Municipio De Las Piedras, supra*, a la pág. 405.

## B. *Jurisdicción*

La jurisdicción es el poder o la autoridad que ostenta un tribunal para considerar y decidir los casos y las controversias que tiene ante sí. *FCPR v. ELA y otros*, 211 DPR 521, 529 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 394 (2022), *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Cancel Rivera v. González Ruiz*, 200 DPR 319, 329 (2018); *Rodríguez Rivera v. De León Otaño,*

191 DPR 700, 708 (2014). El Tribunal tiene el deber de cerciorarse de tener jurisdicción tanto de la materia como de la persona. *FCPR v. ELA y otros*, supra, pág. 530. La jurisdicción sobre la materia es la "capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". *Cobra Acquisitions v. Mun. Yabucoa et al.*, supra, citando a *Rodríguez Rivera v. De León Otaño, supra*, a la pág. 708. Mientras, la jurisdicción sobre la persona es el poder que posee un tribunal para sujetar a una persona a un dictamen. *Trans-Oceanic Life Ins. v. Oracle*, 184 DPR 689, 701 (2012).

La determinación de la jurisdicción es el primer factor que todo foro adjudicativo debe considerar. *FCPR v. ELA y otros*, supra; *Natal Albelo v. Romero Lugo y otros*, 206 DPR 465, 537 (2021). Pues, los tribunales deben ser celosos guardianes de su jurisdicción. *Íd.* En este sentido, las controversias relativas a la jurisdicción son privilegiadas y se deben atender con preferencia. *Íd.* Si un tribunal carece de jurisdicción, debe desestimar la reclamación sin atender la controversia en sus méritos puesto que, de emitir un dictamen sin jurisdicción, no producirá efecto jurídico. *FCPR v. ELA y otros*, supra.

## C. *Parental Kidnapping Prevention Act*

Nuestro Tribunal Supremo ha establecido que los casos relacionados al derecho de familia están investidos del más alto interés público y tienen carácter *sui géneris*. *Figueroa v. Del Rosario*, 147 DPR 121, 128 (1998). Los tribunales, en su poder de *parens patrie*, deben solventar los pleitos sobre patria potestad y custodia tras un análisis objetivo, sereno y cuidadoso de todas las circunstancias, con el único y principal objetivo de velar por el interés óptimo del menor de edad. *Ortiz v. Meléndez*, 164 DPR 16, 26-27 (2005); *Santana Medrano v. Acevedo Osorio*, 116 DPR 298, 301 (1985); Véase Art. 604 del Código Civil de Puerto Rico, 31 LPRA sec. 7283. El interés óptimo del menor es un criterio cardinal en la determinación del domicilio del menor ante desacuerdos entre los progenitores, en las medidas provisionales

relacionadas con los menores ante el divorcio de los progenitores y otras acciones que vinculan a los menores. M. Fraticelli Torres, *Las instituciones familiares en el nuevo Código Civil,* en *El Código Civil de Puerto Rico de 2020: primeras impresiones,* San Juan: Fideicomiso para la Escuela de Derecho de la Universidad de Puerto Rico, 2021, pág. 99. Además, el poder de *parens patrie* faculta limitar los derechos de otras partes para proteger al menor de edad, quien pertenece a uno de los sectores más débiles de la sociedad y no puede abogar por su propio bienestar. *Ortiz v. Meléndez, supra,* pág. 27.

La jurisdicción de un tribunal para atender un pleito relacionado a custodia afianza la complejidad que encaran estos casos. R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada,* Vol. II, San Juan: EJC Univ. Inter. PR, 2002, pág. 1327. Pues, "[l]a naturaleza de los conflictos sobre la custodia y las relaciones filiales pueden generar situaciones en las que varias jurisdicciones tengan contacto con el menor y sus progenitores". *Íd.*

Con el fin de atender los conflictos jurisdiccionales, el Congreso de Estados Unidos aprobó el *Parental Kidnapping Prevention Act* (PKPA), 42 USC sec. 653 *et seq.* Dicho estatuto ocupa el campo en decretos interestatales de custodia, *Santiago v. Kabuka,* 166 DPR 526, 534 (2005), y es aplicable a Puerto Rico. *Cancel Rivera v. González Ruiz, supra,* en la pág. 330. "El PKPA ordena a los tribunales a reconocer entera fe y crédito a los decretos de custodia de otros estados o jurisdicciones, siempre que éstos hayan sido admitidos consecuentemente con las disposiciones del estatuto y el foro original continúe teniendo jurisdicción sobre la materia de custodia del menor". *Santiago v. Kabuka, supra.* Este estatuto estableció un esquema de preferencia jurisdiccional cuando los progenitores están en distintas jurisdicciones, excepto en eventualidades de emergencia. Se basa en cuatro factores en el siguiente orden preferencial: (1) estado de residencia del menor, (2) contactos significativos con el menor o sus

progenitores, (3) jurisdicción residual cuando no existe otro estado con jurisdicción o ha declinado ejercerla y (4) situaciones en las que el menor se encuentra en emergencia. *Íd.* pág. 535; *Collazo Dragoni v. Noceda González,* 198 DPR 476, 484 (2017); R. Serrano Geyls, *op. cit.,* pág. 1328. A saber:

> (c) A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if
>> (1) such court has jurisdiction under the law of such State; and
>> (2) one of the following conditions is met:
>>> **(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;**
>>> (B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and **(II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships**;
>>> (C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because the child, a sibling, or parent of the child has been subjected to or threatened with mistreatment or abuse;
>>> (D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody or visitation of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
>>> **(E) the court has continuing jurisdiction pursuant to subsection (d) of this section**.
> (d) The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant. 28 USCA sec. 1738A(c) y (d). (Énfasis nuestro).

El PKPA dispone como jurisdicción preferencial el estado de residencia del menor. *Santiago v. Kabuka, supra,* a la pág. 536; *Cancel Rivera v. González Ruiz, supra,* a la pág. 333; *Ortega, Jr. v. Morales Ortega,* 131 DPR 783, 791 (1992). La jurisprudencia ha definido el estado de residencia como el lugar donde el niño o la niña ha hecho

amistades, asiste a la escuela, recibe asistencia médica y su vida se ha desarrollado. *Ortega, Jr. v. Morales Ortega*, supra. Por ello, se entiende que en el estado residencia del menor es donde con mayor probabilidad está disponible la evidencia que se requiere para hacer una adecuada determinación de custodia. Según el PKPA, el *home state* es aquel estado o jurisdicción en la que el menor haya vivido con uno o ambos padres, o con un tutor, al menos durante seis (6) meses consecutivos antes de la fecha de inicio de los procedimientos de custodia o fijación de derechos de visita. 28 USCA sec. 1738A, inciso (b)(4). (Traducción del Tribunal Supremo en *Cancel Rivera v. González Ruiz, supra*, a la pág. 333).

Inicialmente, nuestro Tribunal Supremo destacó que, de existir conflicto con respecto a cuál es el requisito jurisdiccional aplicable de acuerdo con el PKPA, siempre deberá prevalecer el del estado residencia del menor. Esto responde a que el foro que haga la determinación de custodia no puede ser aquel que convenga más a los padres, sino el que mejor sirva a los intereses del menor. *Ortega, Jr. v. Morales Ortega, supra*, a la pág. 792. Ahora bien, en *Santiago v. Kabuka, supra*, a la pág. 536, nuestro Máximo Foro determinó que:

> [...] si bien el PKPA brinda preferencia al *home state* del menor sobre cualquier otra jurisdicción, la ley confiere jurisdicción continua al estado o foro que haya emitido un decreto original de custodia para que haga valer o revise sus determinaciones originales. 28 USCA sec. 1738A(d). **Debe entenderse que ante la existencia de un decreto original que se ajuste a las disposiciones del estatuto, la jurisdicción continua es el criterio principal, aun cuando ésta no sea la jurisdicción de residencia del menor**. ("*In these actions the jurisdictional basis [providing continuous jurisdiction] is hierarchically superior even to home state jurisdiction*"). Manuel E. Moraza Choisne, *Juridical Solutions in the U.S.A. for Parental Kidnapping in Child Custody Cases*, 24 Rev. Jur. UIPR 309, 319 (1990). [Énfasis nuestro].

Cabe destacar que un Tribunal conserva jurisdicción continua solo si se cumplen los siguientes requisitos: un decreto original de custodia compatible con las disposiciones del PKPA; que

el foro original mantenga jurisdicción bajo sus propias leyes, y que dicho foro continúe siendo el estado de residencia del menor o al menos de una de las partes.

Como excepción a la norma, el PKPA reconoce jurisdicción a un foro para modificar determinaciones de custodia formuladas por otros foros cuando el estado o jurisdicción que procura variar el decreto ostenta jurisdicción para hacer determinaciones de custodia, y el tribunal del otro foro ha perdido jurisdicción o ha declinado ejercerla. 28 USCA sec. 1738A(f) y (h). Se trata de una excepción débil, pues exige que el foro inicial pierda la jurisdicción o renuncie a ella. *Collazo Dragoni v. Noceda González*, *supra*, a la pág. 485. Ello implica que, una vez comienza un procedimiento de custodia en un estado o jurisdicción y éste es compatible con las disposiciones del PKPA, y dicho procedimiento se encuentra pendiente, un segundo estado o jurisdicción queda impedido de ejercer jurisdicción, o debe declinar ejercerla. 28 USCA 1738A(g); *Santiago v. Kabuka, supra*, a la pág. 537.

Así, en *Collazo Dragoni v. Noceda González*, *supra*, al atender una controversia sobre la jerarquía jurisdiccional que establece el PKPA, el Tribunal Supremo estableció que, si el dictamen original de custodia se emitió conforme a los parámetros del PKPA, los tribunales de otro estado no podrán modificarlo. **Se reiteró que la jurisdicción continua es la norma que prevalece sobre el estado de residencia del menor, mientras se cumpla con las disposiciones y las bases jurisdiccionales del estatuto federal y que ese estado, en donde se emitió el decreto original, se mantenga como el estado de residencia del menor o una de las partes**. (Énfasis nuestro). La importancia jurisdiccional del estado de residencia radica más bien en la determinación de si el dictamen original de custodia fue emitido de forma compatible con la ley, pues se debe evaluar si se cumplieron con las bases jurisdiccionales del

inciso (c). Ante ello, si el dictamen original cumplió con la base jurisdiccional preferida (estado de residencia), los tribunales de otro estado no podrán modificarlo. *Íd.*, pág. 491.

**III.**

En el presente caso, la señora Lim nos solicita que revoquemos la Resolución emitida el 29 de abril de 2025 por el TPI. En consecuencia, nos pide que refiramos el caso de epígrafe a la corte del Condado de Montgomery, Pensilvania, por entender que dicho estado es el foro más conveniente para dilucidar los asuntos relacionados a la custodia de A.S.Y.K. Luego de analizar el expediente ante nuestra consideración y las normas aplicables, concluimos que en efecto, Pensilvania es el foro más conveniente. Nos explicamos.

De los hechos surge que la señora Lim y A.S.Y.K. viven en el estado de Pensilvania. Allí, A.S.Y.K. asiste a la escuela, mantiene amistades, visita a sus médicos, entre otros. De igual forma, surge que las relaciones paternofiliales con el señor Kwon se desarrollan en el estado de Pensilvania.

Ahora bien, el TPI razona que toda vez que las partes pactaron que los tribunales de Puerto Rico mantendrían jurisdicción continua sobre los asuntos relacionados a la custodia y relaciones filiales de A.S.Y.K., dicho acuerdo le otorga jurisdicción continua a pesar de que la menor reside, y los hechos que dan paso a la controversia actual entre las partes, se desarrollaron en Pensilvania. Dicho razonamiento es incorrecto como cuestión de derecho. El PKPA dispone que el foro más conveniente será aquel en el que resida en menor. Ciertamente, nuestra jurisprudencia reconoce que si el dictamen original de custodia se emitió conforme a los parámetros del PKPA, los tribunales de otro estado no podrán modificarlo. De manera que, la jurisdicción continua es la norma que prevalece sobre el estado de residencia del menor, mientras se cumpla con las disposiciones y las bases jurisdiccionales del estatuto federal y que ese estado, en

donde se emitió el decreto original, se mantenga como el estado de residencia del menor o una de las partes.

Ello no obstante, nos encontramos ante un caso donde la menor cuya custodia se pretende dilucidar reside fuera de la jurisdicción de Puerto Rico. Segundo, la menor lleva una vida social con sus amistades, asiste a la escuela, recibe asistencia médica y ha desarrollado su vida en los últimos años en el estado de Pensilvania. Tercero, según la alegación del señor Kwon, el febrero de este año se suscitó una situación que meritó la intervención de varias agencias gubernamentales del estado de Pensilvania. Ante este cuadro, nos parece prudente que el asunto sobre la custodia de A.S.Y.K. se atienda en el estado de Pensilvania. Después de todo, fue en dicho estado donde ocurrieron los alegados hechos y, más importante aún, donde residen las partes involucradas en el pleito.

**IV.**

Por los fundamentos que anteceden, *expedimos* el auto de *certiorari*, y *revocamos* la *Resolución* recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones