| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL | | |
| JUAN A. VILLAFAÑE MOREIRA<br><br>Recurrido<br><br><br>V.<br><br><br>YAYTZA M. RIVERA CAMPOS<br><br>Peticionaria | KLCE202500654 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Caso Núm.: LU2021CV00050<br><br><br>Sobre: Exequátur |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Candelaria Rosa y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de julio de 2025.

Comparece ante nos la señora Yaytza Rivera Campos (señora Rivera Campos o peticionaria) en solicitud de que revisemos un *Mandamiento Enmendado sobre Ejecución de Sentencia* emitido el 22 de mayo de 2025 por el Tribunal de Primera Instancia, Sala de Fajardo (TPI).[1] Mediante el referido dictamen, el TPI validó una *Orden on Paternity, Legal Decision Making Authority, Residential Custodian, Parenting Time and Child Support* emitida el 10 de marzo de 2021 por el Tribunal Superior del condado de Cochise en el estado de Arizona (Tribunal de Arizona) mediante el mecanismo de ejecución por virtud de la Regla 51.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 51.1. Como consecuencia, ordenó la entrega física de su hija para que su padre, el señor Juan A. Villafañe Moreira (señor Villafañe Moreira o recurrido), tuviese su custodia física y legal.

Por los fundamentos que expondremos a continuación, se adelanta la expedición del auto de *certiorari* y la revocación de la determinación recurrida.

---

[1] Apéndice de *Certiorari Civil*, Anejo IV, págs. 10-13. Archivado y notificado el 29 de mayo de 2025.

**I.**

Del expediente ante nuestra consideración surgió que el 10 de marzo de 2021, el Tribunal de Arizona emitió una *Orden on Paternity, Legal Decision Making Authority, Residential Custodian, Parenting Time and Child Support.*[2] Entre otros remedios, la Corte resolvió que tenía jurisdicción para determinar los asuntos de custodia de la menor. Asimismo, determinó que el señor Villafañe Moreira era quien tenía autoridad exclusiva de tomar decisiones sobre la menor y lo designó como el padre con quien la menor residirá principalmente.

Posteriormente, el 13 de abril de 2021, el señor Villafañe Moreira presentó una *Petición de Convalidación o Reconocimiento de Sentencia de otra Jurisdicción – Exequatur* ante el Tribunal de Primera Instancia, Sala Superior de Luquillo.[3]

Tras varios trámites procesales, el 17 de noviembre de 2021, el TPI emitió una *Sentencia.*[4] En síntesis, declaró Ha Lugar la solicitud de convalidación de sentencia extranjera solicitada por el recurrido, le otorgó entera fe y crédito a la *Orden* emitida por el Tribunal de Arizona y ordenó su ejecución en Puerto Rico.

Luego de que la señora Rivera Campos presentara un recurso de apelación, el 21 de octubre de 2022, emitimos una *Sentencia* en la que confirmamos la *Sentencia* emitida por el TPI.[5]

Cuatro (4) años más tarde desde el dictamen de Arizona, el 30 de enero de 2025, el señor Villafañe Moreira presentó una *Moción Asumiendo Representación Legal y Solicitando Ejecución de Sentencia.*[6] Mediante esta, indicó que disponía de un término de cinco (5) años para comenzar los trámites de ejecutar la *Sentencia* emitida el 17 de noviembre de 2021 por el TPI y confirmada el 21 de octubre de 2022 por esta Curia apelativa, a tenor con la Regla 51.1 de

---

[2] *Íd.*, Anejo V, págs. 22-28.
[3] *Íd.*, págs. 14-30.
[4] *Íd.*, Anejo VII, págs. 36-48. Archivada y notificada el 17 de noviembre de 2021.
[5] *Íd.*, Anejo VIII, págs. 49-74. Archivada y notificada el 26 de octubre de 2022.
[6] *Íd.*, Anejo IX, págs. 75-77.

Procedimiento Civil, *supra*, R. 51.1. Indicó que tomando en consideración su atípica solicitud, que la menor reside actualmente con su progenitora y que tendría que viajar desde Estados Unidos a recoger a su hija, le sugirió al Foro Primario lo siguiente:

   a. Que emita orden para la Sra. Yaytza M. Rivera Campos prohibiendo sacar a la menor [...] fuera de la jurisdicción de Puerto Rico.

   b. Que refiera el caso a la Unidad de Trabajo Social del TPI para que se identifique recursos que puedan proveer terapias tanto a los progenitores como a la menor con el ánimo de minimizar cualquier efecto de índole emocional que puedan sufrir al separar físicamente a la menor de su progenitora.

   c. Establecer un plan que contenga un per[í]odo corto de transición para la entrega de la menor a su progenitor.

   d. Programar la intervención del Departamento de la Familia y/o de agentes del orden público el día de la entrega de la menor de ser necesario.

Más adelante, el 7 de abril de 2025, la peticionaria presentó una *Moción en Cumplimiento de Orden y en Solicitud de Remedios Urgentes.*[7] En esta, alegó que el señor Villafañe Moreira no había sido padre presente en la vida de su hija, ya que solo se comunicaba o relacionaba con ella esporádicamente. Además, señaló que desde el año 2019, el recurrido consintió que la menor permaneciera en Puerto Rico con su progenitora y que ahora pretendía ejecutar una sentencia extranjera para separarla del cuidado materno.

Asimismo, la peticionaria afirmó que la menor tenía una vida hecha en Puerto Rico en término de su educación, amistades y su bienestar físico y emocional. Sostuvo que por voluntad del señor Villafañe Moreira, Puerto Rico se convirtió en el domicilio de la menor. Igualmente, adujo que el recurrido era usuario de cocaína.

La señora Rivera Campos añadió que el único motivo detrás de la solicitud de ejecución de la sentencia era continuar ejerciendo actos de violencia en su contra, a pesar de que ya no deseaba mantener una relación sentimental con el señor Villafañe Moreira.

---

[7] *Íd.*, Anejo X, págs. 78-80.

Por otro lado, solicitó tomar conocimiento judicial de una demanda que presentó en solicitud de la custodia monoparental de su hija. Por ello, solicitó la paralización de los efectos de la sentencia, al entender que el recurrido actuó en contra de sus propios actos y que su proceder colocó en detrimento la salud emocional de la menor.

Tras celebrar una vista, el 22 de mayo de 2025, el TPI emitió una *Orden*.[8] En esta, declaró Ha Lugar la solicitud del señor Villafañe Moreira para ejecutar la sentencia dictada en Arizona y convalidada en Puerto Rico. Por ello, ordenó la entrega física de la menor para que su progenitor tuviese su custodia física y legal, más ordenó que la señora Rivera Campos no abandonara la jurisdicción de Puerto Rico con la menor, entre otros remedios. A estos efectos, el Foro Primario expidió un *Mandamiento sobre Ejecución de Sentencia*.

Inconforme, el 10 de junio de 2025, la peticionaria presentó una *Moción de Reconsideración*,[9] en la que reiteró que a lo largo de toda la vida de la menor, estableció con ella vínculos de afecto, custodia, compañía y cuidado. Además, argumentó que no se trataba de la entrega física de un objeto inerte o inanimado, sino de un ser humano incapaz por su minoridad, a quien se le causaría un daño irreparable al ser removida de su entorno y trasladada lejos de sus vínculos conocidos. Señaló que la menor estaría bajo el cuidado de una persona que, por haberla visitado solo esporádicamente, resulta prácticamente desconocida para ella y desconoce sus necesidades básicas. Además, solicitó que se realizaran determinaciones de hechos iniciales o adicionales con respecto a la orden enmendada.

En igual fecha el TPI emitió y notificó una *Orden* en la que declaró No Ha Lugar a la solicitud de reconsideración y consignó que las determinaciones de hechos estaban contenidas en la *Orden*.[10]

---

[8] *Íd.*, Anejo XIII, págs. 89-92. Posteriormente, el 28 de mayo de 2025, el TPI enmendó la *Orden* a los fines de corregir el nombre del señor Villafañe Moreira. Véase *Íd.*, Anejo III, págs. 8-9.
[9] *Íd.*, Anejo II, págs. 3-6.
[10] *Íd.*, Anejo I, pág. 1.

En desacuerdo, el 12 de junio de 2025, la señora Rivera Campos presentó un recurso de certiorari ante este Foro apelativo, en el que planteó que el TPI incurrió en los siguientes errores:

**PRIMER SEÑALAMIENTO DE ERROR:** ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TPI AL ORDENAR LA EJECUCIÓN DE LA SENTENCIA SIN ANTES ORDENAR LA CELEBRACIÓN DE UNA VISTA Y UN INFORME SOCIAL Y PSICOLÓGICO DE YLVR, PARA AUSCULTAR SI EL CAMBIO DE CUSTODIA OBRA EN EL MEJOR INTERÉS DE YLVR.

**SEGUNDO SEÑALAMIENTO DE ERROR**: ERRÓ EL TPI AL VIOLENTAR LA CLÁUSULA DE SUPREMACÍA, DEBIDO A QUE, NO APLICÓ LA PARENTAL KIDNAPPING PREVENTION ACT (PKPA).

En esencia, la peticionaria esgrimió que la decisión recurrida se tomó en ausencia de mecanismos de protección fundamentales en los casos de custodia, lo que representó un riesgo sustancial para el bienestar de una menor de apenas ocho (8) años de edad. Estableció que la ejecución de sentencia respondió a una lógica meramente formalista que ignoró los principios fundamentales del derecho de familia, particularmente el interés óptimo del menor. Señaló que la *Orden* recurrida se dictó sin requerir un informe social, sin establecer un protocolo inter-agencial de transición y sin contemplar medidas menos traumáticas o intrusivas para la menor. Pues, precisó que la repentina transferencia de custodia a un progenitor que no formó parte del núcleo afectivo y cotidiano de la menor sin intervención de peritos, vistas adicionales y sin un plan de transición gradual constituyó una acción precipitada jurídicamente cuestionable y emocionalmente peligrosa. Detalló que el Foro Primario debía contar con la información más completa, acorde con los criterios dispuestos en la *Ley de la "Guía Uniforme para Casos de Relocalización del Padre Custodio"*, Ley Núm. 102-2018, 32 LPRA sec. 3371 *et seq.*

Asimismo, indicó que el TPI le impuso una severa restricción de libertad de movimiento, sin evidencia real de fuga ni antecedentes de incumplimiento, aun cuando ha sido la figura de crianza principal

desde el nacimiento de la menor y con quien ha residido ininterrumpidamente desde su regreso a Puerto Rico.

Por lo anterior, nos solicitó suspender inmediatamente la orden de ejecución, remitir el caso a la Unidad de Trabajo Social del Tribunal para una evaluación objetiva y actualizada, paralizar los procedimientos y ordenar la celebración de vistas adicionales que incluyan la presentación de informes psicológicos y la elaboración de un plan de transición prudente.

En la misma fecha en que instó el antedicho recurso, la señora Rivera Campos presentó una *Moción Urgente en Auxilio de Jurisdicción*, en la que nos solicitó paralizar el proceso de ejecución de sentencia. En respuesta, emitimos una *Resolución* en la que declaramos Ha Lugar el auxilio de jurisdicción y ordenamos la paralización del proceso ejecutorio de sentencia.

Por su parte, el 23 de junio de 2025, el señor Villafañe Moreira presentó su *Oposición a la Expedición del Auto de Certiorari*. En resumen, puntualizó que este recurso constituía un intento improcedente de reabrir una sentencia extranjera ya validada mediante exequátur en el 2021 y confirmada por este Foro apelativo en el 2022 y cuya ejecución respondía al cumplimiento ordinario de una orden final y firme. Según el recurrido, en el transcurso del procedimiento de exequátur ni durante los años posteriores a advenir firme la sentencia, la madre no solicitó una evaluación psicológica ni invocó el estado emocional de la menor como impedimento para su cumplimiento, en detrimento del padre custodio y en perjuicio de la menor. Afirmó que lo anterior era una estrategia litigiosa reactiva y dilatoria que abriría la puerta a la inseguridad jurídica en materia de relaciones filiales y fomentaría la desobediencia a órdenes judiciales válidas, no una preocupación genuina ni continua por el bienestar de la menor. Indicó que si la señora Rivera Campos entendía que existía

un cambio sustancial de circunstancias, debió solicitar una modificación o suspensión en el tribunal con jurisdicción.

El señor Villafañe Moreira manifestó que la ejecución de la sentencia no violó el *Parental Kidnapping Prevention Act* (PKPA), 42 USC sec. 653 *et seq,* ni el debido proceso de ley, ya que la peticionaria impugnó la validez del proceso en Arizona infructuosamente en su oposición al exequátur. Aceptó que aunque el foro de residencia actual de la menor podía tener jurisdicción modificatoria, ello no anula la obligación de ejecutar una sentencia ya convalidada y final. Planteó que en este caso no existía una sentencia posterior que sustituyera la adjudicación hecha en Arizona y validada en Puerto Rico. Por ello, entendió que el Foro Primario no abusó ni erró al usar su discreción al emitir su fallo.

Luego de evaluar los planteamientos de ambas partes, procedemos a exponer la normativa jurídica atinente a este recurso.

## II.

### A. *Certiorari*

Una determinación sobre asuntos post-sentencia es revisable mediante el recurso de *certiorari*. *IG Builders et al. v. BBVAPR*, 185 DPR 307 (2012). El *certiorari* es un recurso extraordinario cuya característica se asienta en la sana discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391 (2021); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *IG Builders et al. v. BBVAPR*, *supra*. Este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83 (2008). En tal virtud, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

De no estar presente algunos de estos criterios, corresponde abstenernos de expedir el auto de *certiorari*.

### B. Determinación de custodia

Los casos relacionados al derecho de familia están investidos del más alto interés público y poseen carácter *sui géneris. Figueroa v. Del Rosario*, 147 DPR 121, 128 (1998). En virtud del poder de parens patriae, los tribunales tienen el deber ineludible de resolver los pleitos de custodia mediante un análisis objetivo, sereno y minucioso de todas las circunstancias, guiadas por el único y principal objetivo de velar por el bienestar y mejor interés del menor. *Ortiz v. Meléndez*, 164 DPR 16, 26-27 (2005); *Santana Medrano v. Acevedo Osorio,* 116 DPR 298, 301 (1985); *Marrero Reyes v. García Ramírez*, 105 DPR 90, 104 (1976); Véase Art. 604 del Código Civil de Puerto Rico, 31 LPRA sec. 7283.

El Alto Foro estableció que, al determinar el decreto más beneficioso para el menor, se deben considerar múltiples factores. Estos son: la edad, el sexo y la salud física y mental del menor; su preferencia, si fuera discernible; el afecto que pudieran brindarles las partes en controversia; su capacidad para satisfacer las necesidades afectivas, morales y económicas del menor; el grado de integración

del menor al hogar, escuela y comunidad; su interacción con sus padres, hermanos y demás familiares, así como la salud emocional de todas las partes involucradas. *Marrero Reyes v. García Ramírez, supra*, pág. 104; véase también *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645 (2016).

Si bien ninguno de estos factores resulta determinante por sí solo, su ponderación conjunta permite aproximarse a una solución más justa dentro de un asunto complejo. *Íd.* El poder de *parens patriae* faculta al tribunal a limitar los derechos de otras partes para salvaguardar los del menor, quien, como miembro de un sector vulnerable en la sociedad, no se encuentra en posición de abogar por su propio bienestar. *Ortiz v. Meléndez, supra*, pág. 27. En esa dirección, un tribunal puede ordenar la comparecencia de todas aquellas personas cuya participación resulte útil para dilucidar el curso de acción que mejor proteja el bienestar del menor. *Muñoz Sánchez v. Báez de Jesús, supra*. Asimismo, el foro se encuentra facultado para ordenar investigaciones de índole social que estime pertinentes. *Íd.* A tales fines, la Unidad Social de Relaciones de Familia y Asuntos de Menores brinda al tribunal asesoramiento social mediante evaluaciones periciales. *Íd.*

La jurisdicción de un tribunal para atender un pleito de custodia refleja la complejidad que presentan estos casos. R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, Vol. II, San Juan: EJC Univ. Inter. PR, 2002, pág. 1327. Pues, "[l]a naturaleza de los conflictos sobre la custodia y las relaciones filiales pueden generar situaciones en las que varias jurisdicciones tengan contacto con el menor y sus progenitores". *Íd.* Por ello, los tribunales deben sopesar los siguientes factores:

> [L]a suficiencia de la información disponible para aquilatar debidamente los hechos y formar juicio sobre el impacto del decreto que se dicte sobre la personalidad y el bienestar del menor; la sustancialidad de los contactos del foro con la controversia; el grado a que el ejercicio de jurisdicción pueda

desalentar la multiplicación y prolongación de controversias sobre el asunto y contribuir a crear la estabilidad necesaria; el punto a que se tienda, como se debe tender, a evitar el secuestro unilateral de menores para fines de obtener un decreto de custodia; y el extremo en que se facilite el mayor respeto posible a las determinaciones de otros estados, así como del propio foro. *Marrero Reyes v. García Ramírez, supra,* pág. 100.

Conviene destacar que las determinaciones emitidas por las salas de familia suelen ser interlocutorias, en tanto que la dinámica propia de las relaciones filiales y los cambios en las circunstancias, conductas o actitudes de las partes impiden conferirles el efecto de cosa juzgada. *Machargo Olivella v. Martínez Schmidt,* 188 DPR 404 (2013) (Opinión de conformidad, Kolthoff Caraballo).

### C. PKPA

Con el propósito de atender los conflictos jurisdiccionales que surgen entre decretos judiciales estatales relacionados con la custodia y derecho de visita, el Congreso de Estados Unidos promulgó el PKPA, *supra. Colón Vega v. Díaz Lebrón,* 211 DPR 548 (2023); *Santiago v. Kabuka,* 166 DPR 526, 534 (2005). Dicho estatuto es aplicable a Puerto Rico. *Cancel Rivera v. González Ruiz,* 200 DPR 319, 330 (2018).

Conforme a sus disposiciones, el PKPA, *supra,* ordena a los tribunales reconocer entera fe y crédito a los decretos de custodia emitidos por otros estados o jurisdicciones, siempre que hayan sido expedidos de conformidad con las disposiciones del estatuto y el foro originario conserve jurisdicción sobre la materia. *Santiago v. Kabuka, supra.* Como consecuencia, como norma general, los tribunales no pueden modificar un dictamen de custodia emitido válidamente por otro estado. *Colón Vega v. Díaz Lebrón, supra,* pág. 556. A modo de excepción, un estado con jurisdicción puede modificar las determinaciones de custodia de otro estado que perdió jurisdicción o renunció a ella. 28 USCA sec. 1738A(f).

El PKPA, *supra,* estableció un esquema de preferencia jurisdiccional cuando los progenitores están en distintas

jurisdicciones, excepto en eventualidades de emergencia. Se basa en cuatro factores en el siguiente orden preferencial: (1) estado de residencia del menor, (2) contactos significativos con el menor o sus progenitores, (3) jurisdicción residual, cuando otro estado no posee jurisdicción o declinó ejercerla y (4) situaciones de emergencia. *Íd.* pág. 535; *Collazo Dragoni v. Noceda González*, 198 DPR 476, 484 (2017); R. Serrano Geyls, *op. cit.*, pág. 1328.

El PKPA, *supra*, dispone como jurisdicción preferencial el estado de residencia del menor, que es el lugar donde residió por los seis (6) meses previos a instar la acción legal. *Santiago v. Kabuka, supra*, 536; *Cancel Rivera v. González Ruiz, supra*, pág. 333; *Collazo Dragoni v. Noceda González, supra*, pág. 483.

A tenor con la *Full Faith and Credit to Child Custody Determinations Act,* 28 USC sec. 1738A y la *Full Faith and Credit Given Full Faith and Credit for Child Support Orders Act,* 28 USC sec. 1738A, los tribunales en Puerto Rico deben reconocer entera fe y crédito a los decretos sobre custodia y pensión alimentaria de otros estados, siempre que sean compatibles con las leyes y el foro original mantenga jurisdicción sobre la materia. Véase *Cancel Rivera v. González Ruiz, supra*, pág. 331.

No obstante, toda sentencia u orden emitida por un tribunal de otro estado de Estados Unidos o de un país extranjero no surte efectos de forma automática. *Colón Vega v. Díaz Lebrón, supra*, pág. 557. Corresponde que un tribunal en Puerto Rico reconozca y valide la sentencia que se pretende ejecutar o hacer efectiva mediante el procedimiento de exequátur. *Íd.*

### D. Ejecución de sentencia

El procedimiento ejecutorio de una sentencia tiene el objetivo de imprimir continuidad a todo proceso judicial que culminó con una sentencia. *Komodidad Dist. V. SLG Sánchez, Doe,* 180 DPR 167 (2010); *Mun. de San Juan v. Prof. Research,* 171 DPR 219 (2007). En

el ámbito civil, este proceso está regulado por la Regla 51.1 de Procedimiento Civil, *supra*, R. 51.1. La misma dispone que la parte a cuyo favor se dictó una sentencia, podrá ejecutarla dentro de cinco (5) años desde que advino firme. *Íd.*

### III.

En el presente caso, la señora Rivera Campos planteó esencialmente que el Foro Primario erró y abusó de su discreción al disponer sobre la ejecución un dictamen sobre custodia, sin ordenar la celebración de una vista ni la realización de un informe social y psicológico de la menor. Ello, con el propósito de auscultar si el cambio de custodia respondía en el mejor interés de la niña, considerado el lapso considerable transcurrido desde que se dictó la Sentencia que se propone ejecutar.

Al realizar un análisis objetivo, sereno y minucioso de todas las circunstancias de este caso, guiados por el bienestar y mejor interés de la menor, concluimos que le asiste la razón a la peticionaria.

El principio rector de toda controversia sobre custodia en Puerto Rico es el mejor bienestar del menor, el cual debe prevalecer sobre consideraciones meramente formales o procesales. Así lo dispone el ordenamiento jurídico puertorriqueño a través del poder de *parens patriae*, en virtud del cual todo tribunal tiene la obligación de realizar un análisis profundo y objetivo de las circunstancias particulares del caso para salvaguardar la integridad física y emocional del menor. En este caso, el TPI ordenó la ejecución automática de una orden emitida **cuatro (4) años** atrás en Arizona, sin ordenar antes un informe social actualizado y sin celebrar una vista para auscultar el impacto del traslado de la menor. El Foro Primario debió considerar factores como la integración de la menor a su hogar, su salud emocional, y su interacción con los progenitores, antes de emitir determinaciones trascendentales sobre custodia.

Aunque la orden emitida por el Tribunal de Arizona fue convalidada en Puerto Rico mediante el procedimiento de *exequátur* en el 2021 y confirmada por este Tribunal de Apelaciones en el 2022, la realidad fáctica del caso puede haber cambiado drásticamente desde entonces. El recurrido esperó cuatro (4) años desde la orden original y más de dos (2) años desde su convalidación para presentar su solicitud de ejecución. Según se alega, durante ese lapso, la menor ha residido de manera continua con su madre, ha establecido lazos familiares, sociales y educativos en Puerto Rico donde ha vivido desde el 2019, y ha crecido sin contacto frecuente con el progenitor. Consideramos que el tiempo transcurrido puede significar un cambio de circunstancias tanto en la vida de la menor como de sus progenitores que exigía ser evaluado antes de ejecutar la orden. En consecuencia, correspondía que el Tribunal recurrido evaluara si Puerto Rico tenía jurisdicción modificatoria y si se había producido un cambio sustancial de circunstancias que ameritaba paralizar o ajustar la ejecución de la orden original.

No podemos dejar pasar por alto —y el TPI debió notarlo con igual rigor— que en este caso transcurrió un período de tiempo significativo entre el proceso de convalidación de la orden de Arizona y su ejecución. Aunque reconocemos que la Regla 51.1 de Procedimiento Civil, *supra*, R. 51.1 permitía solicitar la ejecución de una sentencia dentro de los cinco (5) años desde que advino final y firme, no se podía aplicar dicha norma de manera mecánica cuando se trataba de la custodia de un menor. No estamos ante un mero asunto patrimonial ni ante la entrega de una cosa inerte o intercambiable. Estamos ante una decisión que impacta directamente la estabilidad emocional, social y educativa de una niña que no pudo abogar por su propio bienestar por su vulnerable edad y que vivió los pasados seis (6) años en Puerto Rico bajo el cuidado de su madre. De hecho, a diferencia de sentencias meramente

patrimoniales, los dictámenes de custodia carecen de efecto de cosa juzgada debido a la naturaleza dinámica de las relaciones filiales.

Además, cabe destacar que el señor Villafañe Moreira incurrió en una inacción o desatención prolongada sin justificación razonable. Ello, al no promover diligentemente la ejecución de la orden en Puerto Rico.

Es menester puntualizar que este caso no se trata de reabrir un caso previamente adjudicado ni de desobedecer una orden judicial válida, sino de verificar si su ejecución es jurídicamente compatible con el mejor bienestar de la menor. De lo contrario, el sistema judicial se convertiría en un mero ejecutor automático de decretos que podrían perder vigencia práctica o resultar perjudiciales al bienestar de las personas más vulnerables de la sociedad.

Precisamente por ello, era obligación ineludible del Foro recurrido—como tribunal investido del deber de *parens patriae*—actuar de manera proactiva de cerciorarse de que la orden cuya ejecución se solicitaba no representaba un perjuicio para el bienestar de la menor, antes de ordenar un cambio radical en su vida. No obstante, procedió a ejecutarla precipitadamente, sin requerir, como mínimo, un informe social actualizado y sin auscultar si la separación de la menor de su entorno actual era compatible con su bienestar.

A la luz de lo anterior, expedimos el auto de *certiorari* y revocamos la determinación recurrida. Por consiguiente, devolvemos el caso al TPI para que lo refiera a la Unidad Social de Relaciones de Familia y Asuntos de Menores, obtenga informes periciales, celebre las vistas evidenciarias que sean necesarias, así como cualquier otra gestión pertinente, previo a considerar si la modificación o ejecución del *Orden on Paternity, Legal Decision Making Authority, Residential Custodian, Parenting Time and Child Support* redundaría en el mejor bienestar de la menor.

**IV.**

Por los fundamentos que anteceden, se revoca la determinación recurrida y se devuelve el caso para que se proceda de conformidad con lo aquí dispuesto.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones